MANNIX, Appellant,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.

[Cite as *Mannix v. Ohio Dept. of Human Serv.* (1999), 134 Ohio App.3d 594.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17720.

Decided July 9, 1999.

*Michael J. Millonig,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Patrick W. Beatty,* Assistant Attorney General, for appellee.

FAIN, Judge.

Patricia Mannix appeals from a judgment of the Montgomery County Court of Common Pleas affirming an administrative determination that she was ineligible for Medicaid benefits. The common pleas court held that the Ohio Department of Human Services correctly determined that a retirement account held by Mannix's husband should have been included in the determination of Mannix's eligibility for nursing-home Medicaid benefits.

We conclude that the retirement account and the proceeds therefrom were properly included as a countable resource under the Medicare Catastrophic Coverage Act of 1988, Section 1396r–5, Title 42, U.S.Code. The judgment of the trial court is affirmed.

I

Patricia Mannix entered a nursing facility as a resident in February 1997. At that time, she filed an application for Medicaid benefits. The application was denied. According to the Montgomery County Department of Human Services ("MCDHS"), the denial was based upon the fact that Mannix had failed to provide sufficient information necessary to verify her resources. In December 1997, Mannix requested a state hearing on the denial. Following an administrative hearing, a decision was rendered requiring MCDHS to reopen the original application.

In response to the application, MCDHS performed a resource assessment. The assessment showed that Mannix and her husband had total resources in excess of $45,000. Pursuant to relevant regulations, one-half of the assets was allocated to Mannix and one-half was allocated to her husband. Since Mannix's share of the resources exceeded the maximum allowable amount of resources permitted by regulation, MCDHS ruled that Mannix was ineligible for benefits through December 1997.

In the meantime, Mannix had filed a second application for Medicaid benefits. An updated resource assessment was completed, which showed that Mannix's husband had received a lump-sum payment from his retirement account. The account was not included in the original resource assessment. MCDHS determined that with the retirement account proceeds, Mannix had resources in excess of $183,000, and denied her Medicaid eligibility.

Mannix again requested a hearing on the denial of both applications. The denial was upheld in May 1998. Thereafter, Mannix took an administrative appeal regarding both denials. The hearing examiner denied the appeal; howev-

er, the examiner ordered MCDHS to include the retirement account in the original assessment.

Mannix perfected an administrative appeal to the Montgomery County Court of Common Pleas. On appeal, Mannix claimed that the denial of benefits was erroneous, and that the proceeds from the retirement account should not have been included in the original assessment. The common pleas court denied Mannix's appeal. Mannix now appeals from the judgment of the common pleas court.

## II

In her sole assignment of error, Mannix states as follows:

"The denial of appellant's application for Medicaid benefits and the decision of the common pleas court affirming this denial is contrary to law, since appellant has met all eligibility criteria."

Mannix contends that the Montgomery County Common Pleas Court erred by affirming the denial of her application for Medicaid benefits. Specifically, she argues that the retirement account must be excluded from consideration in the resource assessment pursuant to Section 1056, Title 29, U.S.Code, the Employee Retirement Income Security Act ("ERISA"), and Section 416.1202(a), Title 20, C.F.R. She further claims that since her husband has refused to use the retirement plan to support her, she must be determined to be eligible for benefits. Mannix also contends that the trial court erred by ruling that it did not have the authority to issue an order permitting Mannix's husband to retain the proceeds from his retirement account.

Medicaid was enacted in 1965 as Title XIX of the Social Security Act. Its purpose was to make assistance available to individuals classified as "categorically needy." *Martin v. Ohio Dept. of Human Serv.* (1998), 130 Ohio App.3d 512, 720 N.E.2d 576. The Act also provides for assistance to people who are not eligible for welfare benefits but whose resources are too low to meet their medical expenses. *Id.*

In 1988, Congress enacted the Medicare Catastrophic Coverage Act ("MCCA"), codified at Section 1396r–5, Title 42, U.S.Code. For a detailed discussion of this Act, we refer to Judge Brogan's opinion in *Martin, supra.* Prior to the enactment of the MCCA, "a married person in a nursing home had to 'spend down' all of the family assets to the relevant eligibility limits before he or she could become eligible for assistance. Both husband and wife could be reduced to poverty by medical expenses before either one of them could receive Medicaid assistance to pay for nursing home care." *Id.* at 518, 720 N.E.2d at 581. The

MCCA was enacted in order to prevent the impoverishment of the community spouse (the noninstitutionalized spouse). *Id.*

In *Martin*, Judge Brogan discussed how the purpose of the MCCA is effectuated:

"The MCCA permits the spouse living outside the nursing home (designated the 'community spouse') to keep half of the couple's resources, generally, without affecting the eligibility of the spouse within the nursing home (designated the 'institutionalized spouse'). After the equal division, the community spouse's share must fit within certain minimum and maximum amounts that are indexed to inflation. The adjusted amount is designated the Community Spouse Resource Allowance ('CSRA'). Section 1396r–5(f)(2). Any of the couple's resources that are not part of the CSRA, and are not otherwise excluded from consideration, are deemed available to the institutionalized spouse. The institutionalized spouse may then spend down any amount in excess of the eligibility levels to receive Medicaid benefits." *Id.* at 518–519, 720 N.E.2d at 581.

The MCCA specifically defines "resources" as excluding items excluded by Section 1382b, Title 42, U.S.Code. That section lists resources that are to be excluded, *e.g.*, the residence and funds set aside for burial expenses. However, pension plans are not included in the list.

 We turn first to Mannix's ERISA argument. Mannix's husband received a lump-sum payment from his retirement account and converted the proceeds into an Individual Retirement Account. Therefore, the account was no longer subject to protection pursuant to ERISA. As set forth in our opinion in *Martin*, IRAs are includable resources for purposes of determining Medicaid eligibility. However, even if the account had not been converted, we would find the account to be an includable asset.

Mannix argues that exclusion is mandated by Section 1056, Title 29, U.S.Code (ERISA) because of the regulation set forth at Section 416.1210(j), Title 20, C.F.R. We note that Section 416.1210 was promulgated to implement Section 1382b, Title 42, U.S.Code in regard to exclusions. Subsection (j) of that regulation excludes the following:

"Payments or benefits provided under a Federal statute other than title XVI of the Social Security Act where exclusion is required by such statute."

Mannix argues that the retirement plan is a payment or benefit provided under a federal statute, specifically, the ERISA statute. She also argues that ERISA requires exclusion because the ERISA statute provides that pension plan benefits "may not be assigned or alienated."

We are not persuaded by this argument. First, the mere inclusion of a pension plan in a resource assessment to determine Medicaid eligibility does not constitute the assigning or alienating the benefits. Second, a closer examination of the applicable regulations reveals that for purposes of Section 416.1210(j), Title 20, C.F.R., "payments or benefits" do not include pension or retirement plans protected by the ERISA statute. See Section 416.1236(a), Title 20, C.F.R.

We next turn to Mannix's argument that exclusion is mandated by Section 416.1202(a), Title 20, C.F.R. Mannix contends that by including the retirement plan in the resource assessment, the purpose of Section 416.1202(a) is nullified. We need not address this argument, since it has already been rejected by our opinion in *Martin, supra,* wherein we determined that the MCCA directly supersedes any conflicting provisions of the same subchapter. Section 1396r–5(a)(1), Title 42, U.S.Code.

■ Mannix also argues that when a community spouse refuses to use resources held solely in his own name to support the institutionalized spouse, eligibility must be granted if the resources of the institutionalized spouse fall within the eligibility limits. She argues that she is therefore eligible based upon her husband's refusal to support her. The trial court found that this issue was not raised at the administrative level and was not, therefore, preserved for review. Mannix contends that this issue was properly raised; however, she fails to refer to any portion of the record in support of this contention. Moreover, from our review of the record, it does not appear that this issue was ever raised at the administrative level. Therefore, we find that Mannix has not properly preserved this issue for review on appeal. See *Loyal Order of Moose Lodge No. 1473, Celina v. Ohio Liquor Control Comm.* (1994), 95 Ohio App.3d 109, 641 N.E.2d 1182.

■ We finally address Mannix's claim that the trial court was authorized to grant the community spouse a larger share of the combined spousal resources. She relies upon Section 1396r–5(f), Title 42, U.S.Code and Ohio Adm.Code 5101:1–39–361(A)(6)(b) in support of this claim.

Neither of these provisions permits a common pleas court to enter the type of order requested by Mannix. Section 1396r–5(f) merely states that after an initial determination of eligibility, an institutionalized spouse may transfer assets equal in amount to the community spouse resource allowance to, or for the sole benefit of, the community spouse under certain circumstances, including a court order requiring the institutionalized spouse to support the community spouse. In this case, Mannix was never determined to be eligible. Furthermore, no court has ever entered an order requiring Mannix to support her husband. This statute does not set forth any mechanism whereby a state court reviewing an administra-

tive determination of eligibility may enter an order of spousal support. Pursuant to R.C. 119.12, the common pleas court is limited to reviewing whether the agency determination is supported by reliable, probative, and substantial evidence and is in accordance with the law.

Likewise, the provision of the Ohio Administrative Code cited by Mannix does not provide any authority for a common pleas court to enter an order of spousal support upon administrative review. Instead, it merely indicates the method for determining the amount of resources that may be transferred to the community spouse.

Finally, we find that by ordering that the retirement plan proceeds shall be included in the original assessment, the hearing examiner ensured that the community spouse will be granted a larger share of the resources. Specifically, the original assessment included only approximately $45,000 in resources. Therefore, Mannix's husband was entitled to only roughly one-half, or $22,500, of that amount as his Community Spouse Resource Allowance. When the assessment update was performed, Mannix's husband was limited to the original $22,500 spousal allowance, and, thus, the bulk of the retirement plan was allocated to Mannix. By amending the original resource assessment to include the retirement plan, the includable resources will be higher and the community spouse will be awarded approximately one-half of that greater amount.

After review of all issues raised by Mannix on appeal, we conclude that the trial court did not abuse its discretion by affirming the decision of the administrative agency. Accordingly, Mannix's sole assignment of error is overruled.

### III

Mannix's sole assignment of error having been overruled, the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.