GOLDEN CHRISTIAN ACADEMY, Appellant,

v.

ZELMAN, Supt., Ohio Department of Education, Appellee.

[Cite as *Golden Christian Academy v. Zelman* (2001), 144 Ohio App.3d 513.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–146.

Decided July 10, 2001.

514

*Joseph P. Meissner,* for appellant.

*Betty D. Montgomery,* Attorney General, *Roger F. Carroll* and *Karen Lazorishak,* Assistant Attorneys General, for appellee.

---

TYACK, Judge.

Golden Christian Academy ("Golden") is a nonchartered, nonpublic elementary school located in Cleveland, Ohio. On December 15, 1995, the Superintendent of Public Instruction ("superintendent") registered Golden as a participating school in the Pilot Project Scholarship Program, commonly referred to as the school voucher program.[1] Golden was registered as a participating school by the superintendent pursuant to R.C. 3313.976(A)(3). As a condition of such registration, Golden signed an "Assurance of Compliance." In the Assurance of Compliance, Golden represented, in part, that it currently met and would continue to meet all applicable state minimum standards for nonchartered, nonpublic schools and that each instructional staff member who will work with scholarship students has passed a criminal background investigation.

On July 7, 1999, three evaluators from the Ohio Department of Education ("department") visited Golden and found Golden was out of compliance with certain requirements set forth in the Assurance of Compliance. As a result, Golden was notified by the department and the superintendent that the superintendent intended to revoke Golden's registration in the school voucher program due to such noncompliance and that Golden could request a hearing on the matter. Golden requested a hearing, and a hearing was held before a hearing officer on August 23, 1999.

On August 30, 1999, the hearing officer issued a report. The hearing officer found that Golden was not in compliance with certain requirements in the Assurance of Compliance. However, the hearing officer concluded that the superintendent had no authority under R.C. 3313.976(B) to revoke Golden's registration, as Golden had not violated any provision of R.C. 3313.976(A).

The department filed objections to the hearing officer's report. On September 28, 1999, the superintendent issued her decision, finding that Golden failed to meet certain requirements set forth in the Assurance of Compliance and that the hearing officer erroneously concluded that the superintendent had no authority to revoke Golden's registration based on such noncompliance. Therefore, the

---

1. The voucher provision of the school voucher program has been found unconstitutional by the Sixth Circuit Court of Appeals. *Simmons–Harris v. Zelman* (C.A.6, 2000), 234 F.3d 945. However, petitions for certiorari have been filed, and the Sixth Circuit's decision has been stayed.

superintendent revoked Golden's registration to participate in the school voucher program.

Golden appealed the superintendent's decision to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. On October 13, 1999, the common pleas court suspended execution of the superintendent's revocation of Golden's registration and ordered that Golden work expeditiously to comply with the requirements in the Assurance of Compliance relating to student safety. During the pendency of the appeal to the common pleas court, Golden submitted progress reports to the common pleas court that reflected Golden's attempts to comply with the Assurance of Compliance.

On January 8, 2001, the common pleas court rendered its decision affirming the superintendent's revocation of Golden's registration. Golden (hereinafter "appellant") has appealed to this court, assigning the following as error:

"I. The lower court erred as a matter of law in holding that the 'superintendent's discretion' which was limited by the Legislature in R.C. 3313.976[A](3) to the specific purpose of the Superintendent of the Ohio Department of Education registering nonchartered nonpublic schools in the Cleveland Scholarship Program also permitted the Superintendent to revoke such a school's registration on grounds other than those referred to in R.C. 3313.976(B).

"II. The lower court erred as a matter of law in effectively allowing the appellee Superintendent of the Ohio Board of Education to write rules, regulations and standards for nonchartered nonpublic schools without following procedures set forth in R.C. [Chapter] 119.

"III. The lower court erred as a matter of law in holding that it could not consider additional evidence presented to the court, whether for purposes of overruling the decision and judgment of the Ohio Department of Education or of remanding the case for further administrative proceedings."

■ We address appellant's second assignment of error first. In its second assignment of error, appellant contends that the Assurance of Compliance is in the nature of a rule and regulation, yet the Assurance of Compliance never went through the rule-making procedure set forth in R.C. Chapter 119. The department (hereinafter "appellee") asserts that this issue has been waived because it was not raised at the administrative level. We agree with appellee's assertion and find that the issue raised in appellant's second assignment of error has been waived.

■ Appellant raised the issue of the enforceability of the Assurance of Compliance in its appeal to the common pleas court. However, this issue was not raised at the administrative level. Issues not raised at the administrative level

are waived. See *Mannix v. Ohio Dept. of Human Serv.* (1999), 134 Ohio App.3d 594, 599, 731 N.E.2d 1154, 1157–1158, discretionary appeal not allowed in (1999), 87 Ohio St.3d 1443, 719 N.E.2d 6. Accordingly, appellant's second assignment of error is overruled.

■ In its third assignment of error, appellant contends that the common pleas court erred in refusing to consider additional evidence. Specifically, appellant asserts that the common pleas court should have considered appellant's subsequent compliance with the Assurance of Compliance that occurred during the appeal. Appellant argues that based on changed circumstances and new evidence, the common pleas court should have determined that the superintendent's decision to revoke appellant's registration was no longer applicable or, at least, that the matter should have been remanded for further administrative proceedings consistent with this new evidence. Appellee contends that this new evidence was not in existence at the time of the administrative hearing and cannot be considered under R.C. 119.12.

R.C. 119.12 states:

"Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency. Unless otherwise provided by law, the court may grant a request for the admission of additional evidence *when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency.*" (Emphasis added.)

■ Newly discovered evidence is evidence that was in existence at the time of the administrative hearing. *Cincinnati City School Dist. v. State Bd. of Edn.* (1996), 113 Ohio App.3d 305, 317, 680 N.E.2d 1061, 1068–1069. Newly discovered evidence does not refer to newly created evidence. *Diversified Benefit Plans Agency, Inc. v. Duryee* (1995), 101 Ohio App.3d 495, 501–502, 655 N.E.2d 1353, 1356–1358, citing *Steckler v. Ohio State Bd. of Psychology* (1992), 83 Ohio App.3d 33, 38, 613 N.E.2d 1070, 1073–1074.

The evidence appellant sought to be considered by the common pleas court was not newly discovered evidence that was in existence at the time of the administrative hearing. It was evidence of facts occurring subsequent to the administrative process. Hence, the common pleas court properly declined to consider such evidence.

Accordingly, appellant's third assignment of error is overruled.

In its first assignment of error, appellant contends that the common pleas court erred in concluding that the superintendent had the authority to revoke appellant's registration to participate in the school voucher program. Appellant

argues that while the superintendent had discretion under R.C. 3313.976(A)(3) to register appellant for participation in the program, she did not have the same discretion under R.C. 3313.976(B) to revoke the registration.

R.C. 3313.976 addresses the registration of private schools for participation in the school voucher program. R.C. 3313.976 states:

"(A) No private school may receive scholarship payments from parents pursuant to section 3313.979 of the Revised Code until the chief administrator of the private school registers the school with the superintendent of public instruction. The state superintendent *shall* register any school that meets the following requirements:

"(1) The school is located within the boundaries of the pilot project school district;

"(2) The school indicates in writing its commitment to follow all requirements for a state-sponsored scholarship program specified under sections 3313.974 to 3313.979 of the Revised Code, including, but not limited to, the requirements for admitting students pursuant to section 3313.977 of the Revised Code;

"(3) The school meets all state minimum standards for chartered nonpublic schools in effect on July 1, 1992, *except that the state superintendent at the superintendent's discretion may register nonchartered nonpublic schools meeting the other requirements of this division;*

"(4) The school does not discriminate on the basis of race, religion, or ethnic background;

"(5) The school enrolls a minimum of ten students per class or a sum of at least twenty-five students in all the classes offered;

"(6) The school does not advocate or foster unlawful behavior or teach hatred of any person or group on the basis of race, ethnicity, national origin, or religion;

"(7) The school does not provide false or misleading information about the school to parents, students, or the general public;

"(8) The school agrees not to charge any tuition to low-income families participating in the scholarship program in excess of ten percent of the scholarship amount established pursuant to division (C)(1) of section 3313.978 of the Revised Code, excluding any increase described in division (C)(2) of that section. The school shall permit any such tuition, at the discretion of the parent, to be satisfied by the low-income family's provision of in-kind contributions or services." (Emphasis added.)

Appellant is a nonchartered, nonpublic school. Hence, the only way it could participate in the school voucher program was pursuant to the superinten-

dent's discretionary power as set forth in R.C. 3313.976(A)(3).[2] Pursuant to this discretionary power, the superintendent registered appellant in December 1995. In so registering, the superintendent required appellant to sign the Assurance of Compliance. Steven Puckett, Ph.D., the department's Assistant Superintendent of Schools, testified that there was a concern with the then superintendent, Dr. John Goff, about participation in the program by nonchartered, nonpublic schools, which have less stringent standards applied to them. Dr. Puckett testified that signing the Assurance of Compliance was necessary in order to participate in the school voucher program.

The Assurance of Compliance states:

"I, Sharon Golden, in my capacity as Director/Head Teacher hereby request John M. Goff, Superintendent of Public Instruction, to register the school I represent, Golden Christian Academy, to be eligible to participate in the Cleveland Scholarship and Tutoring Program. On behalf of the school that I represent, I hereby attest that:

"A. The school currently meets and will continue to meet for at least as long as any scholarship student is enrolled, all applicable State Minimum Standards for nonchartered nonpublic schools in effect July 1, 1992;

"* * *

"J. Each instructional staff member who will work with scholarship students has passed a criminal background investigation[;]

"K. I consent to allow the State Superintendent to verify compliance with each of the preceding requirements[.]"

As to requirement "A" above, Ohio Adm.Code 3301–35–08 sets forth the minimum standards for nonchartered, non-tax supported schools and states:

"A school, which is not chartered or seeking a charter from the state board of education because of truly held religious beliefs, shall annually certify in a report to the parents of its pupils that the school meets Ohio minimum standards for non-chartered, non-tax supported schools cited in paragraphs (A) to (H) of this rule. * * *

"* * *

"(G) Pupil health and safety. Each non-chartered, non-tax supported school shall comply with state and local health, fire, and safety laws."

As indicated above, the hearing officer found that appellant violated certain minimum standards for nonchartered, nonpublic schools and failed to adhere to

---

2. There is no allegation that appellant failed to meet the other requirements in R.C. 3313.976(A).

certain requirements set forth in the Assurance of Compliance. Specifically, the hearing officer found, and the superintendent subsequently adopted the finding, that appellant failed to have a fire department safety certificate and environmental safety and health certificates, lacked criminal background investigations on its instructional staff, and failed to have student files on the premises. However, although the hearing officer found that appellant had violated the Assurance of Compliance, the hearing officer concluded that the superintendent had no power under R.C. 3313.976(B) to revoke appellant's registration. The superintendent disagreed, concluding that she had the authority under R.C. 3313.976(A)(3) and (B) to revoke appellant's registration for failure to comply with the Assurance of Compliance.

R.C. 3313.976(B) addresses when the superintendent must revoke a school's registration and states:

"The state superintendent shall revoke the registration of any school if, after a hearing, the superintendent determines that the school is in violation of any of the provisions of division (A) of this section."

The hearing officer concluded that the superintendent had no authority to revoke appellant's registration because appellant was not in violation of any of the provisions of R.C. 3313.976(A). Appellant urges this court to adopt the reasoning of the hearing officer and asserts that R.C. 3313.976(B) says nothing about the superintendent's discretion and allows revocation only if a provision of R.C. 3313.976(A) has been violated.

Appellee argues that it is absurd and illogical to give the superintendent the discretion to register a nonchartered, nonpublic school under certain conditions but to prohibit her from revoking such registration when such conditions are not met or are violated. Appellee asserts that because continuous compliance with the Assurance of Compliance is a condition to being registered under R.C. 3313.976(A)(3), failure to so comply is a violation of R.C. 3313.976(A)(3) and, therefore, the superintendent has the power to revoke the registration pursuant to R.C. 3313.976(B). For the reasons that follow, we affirm the common pleas court's decision and conclude that the superintendent properly revoked appellant's registration to participate in the school voucher program.

The issue presented centers on the interpretation of R.C. 3313.976. The paramount consideration in construing a statute is legislative intent. *State ex rel. Thompson v. Spon* (1998), 83 Ohio St.3d 551, 553, 700 N.E.2d 1281, 1282–1283. In determining legislative intent, words in a statute must be given their usual, normal, or customary meaning. *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351, 1353–1354. If the meaning of a statute is unambiguous and definite, the statute must be applied as

written, and no further interpretation is appropriate. *Id.* However, when a statute is subject to various interpretations, a court may invoke rules of statutory construction in order to arrive at legislative intent. *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213–214, 404 N.E.2d 159, 161–162.

R.C. 3313.976(B) appears to be clear and unambiguous on its face. It states, in essence, that if a school is in violation of any provision of R.C. 3313.976(A), the school's registration shall be revoked. However, as applied to the situation presented here—where the superintendent registers a nonchartered, nonpublic school pursuant to R.C. 3313.976(A)(3) and under certain conditions—the statute's meaning becomes less clear. Appellant contends that R.C. 3313.976(B) sets forth the only situation under which the superintendent may revoke a registration: when a school violates a specific provision of R.C. 3313.976(A). However, the language in R.C. 3313.976(B) simply indicates when a registration *must* be revoked. The language does not on its face prohibit the superintendent from revoking a registration pursuant to the discretionary authority granted in R.C. 3313.976(A)(3). It is unclear whether R.C. 3313.976 permits the superintendent to revoke the registration granted appellant; therefore, we must turn to rules of statutory construction in order to determine the legislature's intent.

When a statute is ambiguous, we must determine the intent of the legislature in enacting the statute and construe the statute in a manner that reflects such intent. *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 31, 723 N.E.2d 97, 101–102. R.C. 1.49 states:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"* * *

"(E) The consequences of a particular construction."

In addition to the above principles, "all statutes relating to the same general subject matter must be read *in pari materia.*" *State ex rel. Gains v. Rossi* (1999), 86 Ohio St.3d 620, 622, 716 N.E.2d 204, 207. "[I]n interpreting related and co-existing statutes, we must harmonize and accord full application to each of [the] statutes unless they are irreconcilable and in hopeless conflict." *Id.*

The circumstances under which the statute at issue was enacted were the educational and fiscal crises in the Cleveland City School District. *Simmons–Harris v. Goff* (May 1, 1997), Franklin App. Nos. 96APE08–982 and 96APE08–991, unreported, 1997 WL 217583, affirmed in part and reversed in part on different grounds in (1999), 86 Ohio St.3d 1, 711 N.E.2d 203. The purpose of the

school voucher program was to provide low-income parents with the opportunity to have their children educated outside the embattled Cleveland City School District. *Simmons–Harris,* Franklin App. Nos. 96APE08–982 and 96APE08–991. What is also clear from R.C. 3313.976(A)(3) is that the schools wishing to participate in the school voucher program must be able to provide a safe and quality education. As appellee points out, an alternative school must meet all state minimum standards (effective July 1, 1992) for chartered, nonpublic schools. R.C. 3313.976(A)(3). Chartered, nonpublic schools are subject to far more rigorous standards than are unchartered, nonpublic schools. See Ohio Adm.Code 3301–35–04, 3301–35–02, and 3301–35–03.

However, R.C. 3313.976(A)(3) does provide that the superintendent, *in her discretion,* may register a nonchartered, nonpublic school. "Discretion" is defined as "the power or right to decide or act according to one's own judgment; freedom of judgment or choice." The Random House Dictionary of the English Language (2 Ed.1987) 563. See, also, Webster's Ninth New Collegiate Dictionary (1987) 362 ("discretion" defined as the " * * * ability to make responsible decisions[;] * * * individual choice or judgment[;] * * * power of free decision or latitude of choice within certain legal bounds[;] * * * the result of separating or distinguishing * * * "). Implicit in this discretion is the superintendent's ability to condition a nonchartered, nonpublic school's participation on certain requirements set forth by the superintendent.

Indeed, the superintendent deemed it necessary to condition a nonchartered, nonpublic school's participation in the school voucher program on its signing of and compliance with the Assurance of Compliance. Presumably, the superintendent intended that schools signing the Assurance of Compliance actually comply with it. In signing the Assurance of Compliance, appellant represented, in part, that it currently met and would continue to meet all applicable state minimum standards for nonchartered, nonpublic schools and that each instructional staff member who would work with students had passed a criminal background investigation. The logical consequence of a refusal to sign or a failure to comply with the Assurance of Compliance is that the superintendent can refuse to register a school or can revoke a school's registration that was granted based on compliance with the Assurance of Compliance.

If we accepted appellant's interpretation of R.C. 3313.976(A)(3) and (B), the superintendent would have the discretionary power to register a nonchartered, nonpublic school based on the school's signing of the Assurance of Compliance, but the superintendent could not revoke a registration granted under such discretionary power when the school fails to comply with the Assurance of Compliance. This interpretation leads to an absurd result, and we will not so construe the statute. See R.C. 1.49(E). In addition, such an interpretation

would thwart the purpose behind the provisions—to provide safe and quality alternative schools. Instead, we find that the superintendent had the discretionary authority to register appellant and also had the power to revoke appellant's registration for failure to' comply with the Assurance of Compliance.

Again, R.C. 3313.976(A) grants the superintendent the discretion to register a nonchartered, nonpublic school. R.C. 3313.976(B) does not prohibit the superintendent from revoking a registration granted pursuant to her discretionary power in R.C. 3313.976(A)(3). Reading R.C. 3313.976(A)(3) and (B) together and in light of the circumstances under which the school voucher program was enacted, the object sought to be attained by the statute(s) and the absurd and illogical consequence that would result if we accepted appellant's interpretation, we construe R.C. 3313.976(A)(3) and (B) to mean that the superintendent has the discretionary power to register a nonchartered, nonpublic school, such registration being conditioned upon the school meeting certain requirements set by the superintendent, and that the superintendent has the corresponding power to revoke a discretionary registration if the school fails to comply with such requirements.

We note that our interpretation is consistent with a decision of the Supreme Court of Ohio that addressed the powers of the Superintendent of Insurance. In *State ex rel. European Acc. Ins. Co. v. Tomlinson* (1920), 101 Ohio St. 459, 467, 129 N.E. 684, 686, the Supreme Court addressed whether the Superintendent of Insurance had the power to revoke a license to transact certain insurance business in the state upon discovering that the licensee was violating a statute. Former Section 617, General Code, stated that the Superintendent of Insurance shall see that the laws relating to insurance are duly executed and enforced and authorized the Superintendent of Insurance to institute criminal proceedings for violations thereof. *Id.* The Supreme Court held that this remedy was not exclusive and that the more effectual way to execute and enforce the insurance laws was to revoke the license of the offending company. *Id.* at 468, 129 N.E. at 686.

The Supreme Court noted that the law gave the Superintendent of Insurance continuing powers of supervision and required him to see that the insurance laws were enforced. *Id.* The Supreme Court stated that while there was no specific power of revocation granted to the Superintendent of Insurance, the statute gave him full authority to revoke the license in order to secure compliance with the insurance laws. *Id.* See, also, *State ex rel. Natl. Mut. Ins. Co. v. Conn* (1927), 115 Ohio St. 607, 622, 155 N.E. 138, 142 (duty of Superintendent of Insurance, conferred by statute, to see that the insurance laws are duly executed and enforced impliedly confers the authority to withhold or revoke a license in order to make that statute more effective).

In the case at bar, the legislature has given the superintendent the discretionary authority to register nonchartered, nonpublic schools, and the superintendent has determined that in so registering, a nonchartered, nonpublic school must adhere to certain conditions.  If the nonchartered, nonpublic school fails to meet or to continue to meet such conditions, the superintendent has the corresponding authority to revoke the school's registration.  We note that the superintendent does not have unbridled power in this regard.  Indeed, the revocation is subject to the administrative and appellate review process.

Given all of the above, we conclude that the superintendent had the power to revoke appellant's registration to participate in the school voucher program.  Accordingly, appellant's first assignment of error is overruled.

In summary, appellant's first, second and third assignments of error are overruled.  Therefore, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT, P.J., and PETREE, J., concur.