OPINION
{¶ 1} Appellant, ETB Corp., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor Control Commission ("commission"), that reversed an order of the Superintendent of the Division of Liquor Control granting appellant's 2000-2001 renewal application for a D-5 liquor permit. Because the common pleas court did not abuse its discretion in finding the commission's decision to be supported by substantial, reliable and probative evidence and to be in accordance with law, we affirm.
 {¶ 2} By resolution adopted July 28, 2000, appellee, the council of the city of Cleveland ("city"), opposed the renewal of a D-5 liquor permit owned by ETB Corp., dba Cozy Corner Lounge at 14501 Woodworth Avenue in Cleveland, Ohio, due to appellant's alleged violations of R.C.4303.292(A). By the same resolution, the city also directed the clerk of council to file certified copies of the resolution along with a hearing request to the Director of Liquor Control in accordance with R.C. 4303.271.
 {¶ 3} Under R.C. 4303.292(A), "[t]he division of liquor control may refuse to * * * renew * * * any retail permit issued under this chapter if it finds: (1) [t]hat the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owning ten per cent or more of its capital stock: * * * (b) [h]as operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state[.]" Further, under R.C. 4303.292(A)(2)(c), the division of liquor control may refuse to renew a retail permit if it finds the place for which the permit is sought "[i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation thereunder by the applicant."
 {¶ 4} In accordance with R.C. 4303.271 and the city's request, the Superintendent of the Division of Liquor Control set the matter for hearing before a hearing examiner. By order issued April 2, 2001, the superintendent determined the city had failed to produce sufficient evidence to show (1) appellant was unfit to engage in the retail sale of alcoholic beverages, or (2) appellant's business would adversely impact the peace, sobriety, or good order of the community. Accordingly, the superintendent overruled the objection and ordered the processing of appellant's renewal application to continue.
 {¶ 5} The city appealed to the commission, and a de novo hearing was held on September 25, 2001 to consider appellant's request for renewal of its D-5 liquor permit. By order mailed October 5, 2001, the commission reversed the decision of the Superintendent of the Division of Liquor Control.
 {¶ 6} Appellant timely appealed to the common pleas court, contending the commission's decision was not supported by substantial, reliable and probative evidence and is not in accordance with law. The common pleas court determined that the commission's order was not supported by sufficient evidence under R.C. 4303.292(A)(2)(c), but it found substantial, reliable and probative evidence to support an order of non-renewal pursuant to R.C. 4303.292(A)(1)(b) (regarding applicant's operation of liquor business in a manner that demonstrates a disregard for laws, regulations or local ordinances). Accordingly, the common pleas court affirmed the commission's October 5, 2001 order of non-renewal. Appellant appeals, assigning a single error:
 {¶ 7} "The court of common pleas erred when it found that the order of the Liquor Control Commission was supported by reliable, probative, and substantial evidence and in accordance with law."
 {¶ 8} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275,280.
 {¶ 9} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " Lies v. Veterinary Medical Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati v. Conrad, supra.
 {¶ 10} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied,67 Ohio St.3d 1439. In Pons, the Ohio Supreme Court noted: "* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or trial court. Instead, the appellate court must affirm the trial court's judgment."
 {¶ 11} An appellate court, however, has plenary review of purely legal questions. Steinfels v. Ohio Dept. of Commerce, Div. of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999),84 Ohio St.3d 1488; McGee v. Ohio State Bd. of Psychology (1993),82 Ohio App.3d 301, 305, citing Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus, rehearing denied, 63 Ohio St.3d 1459.
 {¶ 12} The evidence before the commission at the September 25, 2001 hearing focused primarily on an incident occurring on September 30, 2000, at appellant's bar, the Cozy Corner Lounge. On that date, police detectives entered the permit premises at a time the bar was open and patrons were present. Although the permit was issued to the first floor and basement of 14501 Woodworth Avenue ("14501"), that store front address is connected to 14503 Woodworth Avenue ("14503") and 14507 Woodworth Avenue ("14507") through inner doors. Because the entrances to 14503 and 14507 were boarded, access to 14503 and 14507 was gained from the entrance to 14501; entrance into the basement of the permit premises at 14501 was gained through 14503.
 {¶ 13} As police entered the premises through the door at 14501, police observed Eugene Baugh, the bar's manager and husband of Mary Libby Baugh, who is the sole owner of the permit holder, ETB Corp., dba Cozy Corner Lounge. Eugene Baugh was behind the counter and held a small white buzzer in his hand. As police officers crossed into 14503 through an open door, Baugh pressed the buzzer. When police arrived in 14507, police found bottles of liquor on a bar and a group of men sitting around tables where they were playing poker. As the buzzer sounded in 14507, the men who had been playing poker grabbed money from a table and began to stuff the money into their pockets. Police officers instructed the men to place the money back on the table. Additionally, while police were in 14507, a man came to the back entrance of 14507 and announced he was "here for the game." (Tr. 42.) During the September 30 raid, police also discovered a cooler with beer in 14503; according to police, at one time a pool table was also located in 14503 and liquor was stored in both 14503 and 14507.
 {¶ 14} According to Baugh's testimony, Baugh uses 14507, which has a refrigerator, as a place to lie down when he is tired. He also indicated his assistant manager on occasion would use 14507 as a place to rest.
 {¶ 15} In addition to the particulars of the September 30 incident, the city presented the testimony of Councilman Roosevelt Coats, who testified the Cozy Corner Lounge had been problematic. He testified that, although the area where the bar is located is primarily residential, Cozy Corner Lounge is situated across from a school. Councilman Coats stated he had received complaints about Cozy Corner Lounge, including gambling, alcohol displayed in front of the school, drug activity, and loitering.
 {¶ 16} The city also presented evidence that, on January 26, 1999, police were at the permit premises to conduct an inspection when police discovered Robert Lovelace, who was found in 14503, possessed heroin. Lovelace, Eugene Baugh's nephew, was not an employee of the bar, and no evidence indicated any bar employee supplied the heroin to Lovelace.
 {¶ 17} In its single assignment of error, appellant contends the evidence fails to show appellant's disregard for the law because (1) the evidence fails to demonstrate gambling in violation of Ohio Adm. Code4301:1-1-53 ("Rule 53") in the absence of proof of profit from the alleged gambling activity in 14507, (2) the evidence fails to show that gambling occurred on the permit premises, because the liquor permit specifies 14501, not 14507, as the permit premises, and (3) the evidence pertaining to the incident of September 30, 2000, which occurred after the city's resolution objecting to the renewal, should not have been considered in determining whether appellant evidenced sufficient disregard for the law to support non-renewal of its liquor permit.
 {¶ 18} The city relied on the evidence of the September 30, 2000 incident to demonstrate appellant, through Eugene Baugh, demonstrated a disregard for the law by allowing gambling to occur on the permit premises. Under the first issue, appellant contends the commission failed to show that gambling was occurring on the permit premises, as none of the evidence indicates appellant received any financial return, or profit, from the poker game. Instead, under the evidence presented, only the poker players may have prospered from the card game.
 {¶ 19} Rule 53(B) provides "[n]o person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code." R.C. 2915.01(F)(3) defines a gambling device to include a deck of cards; R.C. 2915.01(G)(1) defines a gambling offense as violation of R.C. 2915.02 or 2915.04; and R.C. 2915.01(G)(4) makes a conspiracy or attempt to commit, or complicity in committing, any offense under R.C.2915.01(G)(1), a gambling offense.
 {¶ 20} Here, the city asserts the evidence supports a finding that ETB Corp. violated R.C. 2915.02(A)(2) and (B). Under R.C. 2915.02(A)(2), "[n]o person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]" Under R.C. 2915.02(B), "[f]or purposes of division (A)(2) of this section, a person facilitates a scheme or game of chance conducted for profit if the person in any way knowingly aids in the conduct or operation of any such scheme or game, including, without limitation, playing any such scheme or game."
 {¶ 21} The city further asserts the evidence supports a violation of R.C. 2915.04(A) as it relates to R.C. 2915.04(B). Pursuant to R.C.2915.04(A), "[n]o person, while at a hotel, restaurant, tavern, store, arena, hall, or other place of public accommodation, business, amusement, or resort shall make a bet or play any game of chance." R.C.2915.04(B) provides that "[n]o person, being the owner or lessee, or having custody, control, or supervision of a hotel, restaurant, tavern, store, arena, hall, or other place of public accommodation, business, amusement, or resort shall recklessly permit such premises to be used or occupied in violation of division (A) of this section." See R.C. 2915.01(D) (specifying "game of chance" includes poker).
 {¶ 22} Appellant correctly points out that R.C. 2915.02(A) and (B) require that the game of chance be conducted for profit, and further contends the record lacks evidence of profit. Appellant did not raise the issue of profit before the commission. Having failed to raise the argument at the first available opportunity, appellant waived it. Golden Christian Academy v. Zelman (2001), 144 Ohio App.3d 513, 516, dismissed, appeal not allowed, 93 Ohio St.3d 1473; State ex rel. Chambers v. Findlay Indus. (Mar. 30, 2000), Franklin App. No. 99AP-210, cause dismissed,89 Ohio St.3d 1458.
 {¶ 23} We note, however, the circumstances involved in the September 30 incident strongly suggest illegal gambling, as the manager buzzed the room where the poker game was being conducted, apparently to warn of the impending arrival of police. In addition, the players immediately sought to hide the cash involved in the game, and a unidentified man appeared at the back door inquiring about the "game." Indeed, the buzzer set-up suggests the poker game was not the first to be played in that room. Moreover, even if the profit element be absent from the city's evidence regarding a violation of R.C. 2915.02, the remaining evidence unequivocally shows that a card game was being played in violation of R.C. 2915.04, and the buzzer set-up shows the permit holder, through Eugene Baugh, not only was aware of it, but recklessly permitted it and even facilitated it.
 {¶ 24} Appellant's third issue, which contends the commission improperly considered evidence concerning the September 30 incident, similarly is unavailing. Appellant failed to raise the issue before the commission and thereby waived it. However, even if the issue be not waived for purposes of appeal, nothing in R.C. 4303.271(B) specifies that incidents outside the time period of the resolution of objection may not be considered. On the contrary, R.C. 4303.271(B), which sets forth the procedure to be followed regarding a municipal corporation's objections, instructs that reasons not specified in the resolution shall not be considered. Specifically, R.C. 4303.271(B) provides:
 {¶ 25} "The legislative authority of the municipal corporation * * * may object to the renewal of a permit * * * for any of the reasons contained in division (A) of section 4303.292 of the Revised Code. Any objection shall be made no later than thirty days prior to the expiration of the permit and the department shall accept the objection if it is postmarked no later than thirty days prior to the expiration of the permit. The objection shall be made by resolution specifying the reasons for objecting to the renewal and requesting a hearing, but no objection shall be based upon noncompliance of the permit premises with local zoning regulations which prohibit the sale of beer or intoxicating liquor in an area zoned for commercial or industrial uses, for a permit premises that would otherwise qualify for a proper permit issued by the division. * * *"
 {¶ 26} Here, by resolution, the city specified appellant's disregard of laws as a reason for its objection. The reason for the city's objection did not change from the time the resolution was issued to the time of the hearing before the commission. Accordingly, appellant's third issue is unpersuasive.
 {¶ 27} Appellant's second issue contends that even if the evidence demonstrates a gambling violation, the violation did not occur on the permit premises. According to the record, the permit premises is 14501, first floor and basement. Because the poker game occurred at 14507, appellant contends the commission and the common pleas court erred in considering the poker game in their determinations.
 {¶ 28} Contrary to appellant's contentions, the evidence indicates appellant treated all three addresses as the permit premises. The sole street entrance to all three addresses was through 14501, as the entrances to 14503 and 14507 were boarded and unavailable for use. When the police arrived, the doors connecting 14501 to 14503, and 14503 to 14507, were open, allowing for free passage. Liquor was found in both 14503 and 14507, and a cooler with beer was placed in 14503. 14507 was used as a lounge for the manager and assistant manager. Indeed, access to the "permit premises," the basement of 14501, was through 14503.
 {¶ 29} Rule 53 prohibits a permit holder from having a gambling device, "in, upon or about the premises of the permit holder." See R.C.2915.01(F)(3) (defining a "gambling device" to include a deck of cards). Even though the poker game occurred in 14507, based on the evidence the commission reasonably could conclude the poker game occurred about the premises, especially in light of appellant's treating all three addresses as a single unit and appellant's using 14503 and 14507 to support the operation of 14501. See, also, former Ohio Adm. Code 4301:1-1-79(C) ("Said inspections shall be conducted on that portion of the premises that is included as part of the licensed premises. The licensed premises shall be determined by the most current drawing of the premises on file with the department of liquor control, permit division. Additionally, the licensed premises shall include any part of that building or any other building connected with the licensed premises by direct access or by a common entrance and being used as a subterfuge or means of evading the provisions of Title XLIII of the Revised Code or of the rules of the commission").
 {¶ 30} As a result, none of the three issues appellant raises on appeal from the decision of the common pleas court is persuasive. Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
LAZARUS and KLATT, JJ., concur.