[Cite as *Cty. Med., Inc v. Dept. of Dev. Disabilities*, 2017-Ohio-5745.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104921**

**COUNTY MED, INC.**

PLAINTIFF-APPELLANT

vs.

**OHIO DEPARTMENT OF
DEVELOPMENTAL DISABILITIES**

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-861453

**BEFORE:** E.T. Gallagher, J., Keough, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 6, 2017

**ATTORNEY FOR APPELLANT**

Sam A. Zingale
614 West Superior Avenue
700 Rockefeller Building
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Mike DeWine
Ohio Attorney General

BY:     Stephanie Deters
Assistant Attorney General
The Health and Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, County Med Inc. ("County Med"), appeals a judgment affirming an adjudication order of the Ohio Department of Developmental Disabilities ("DODD") that revoked its operating certificate. County Med raises four assignments of error:

1. The trial court erred in not delineating the "additional evidence" it admitted into the record, which oversight necessitates remanding this case to the trial court for the purpose of precisely identifying the "additional evidence" to which the trial court referred.

2. Assuming the trial court admitted all of the documents that plaintiff-appellant County Med, Inc. presented during the course of the proceedings before the trial court, the revocation of County Med, Inc.'s certificate was contrary to law, and the trial court erred in affirming the final Agency Decision of defendant-appellee Ohio Department of Developmental Disabilities ("Agency") revoking County Med Inc.'s certificate to operate because the evidence presented by County Med, Inc. shows conclusively that County Med, Inc. was in full compliance with all of the Agency's rules and regulations.

3. Assuming that the trial court admitted all of the documents that plaintiff-appellant County Med, Inc. presented during the course of the proceedings before the trial court, the trial court erred in affirming the final Agency decision revoking County Med, Inc.'s certificate to operate because that final Agency decision was not founded on "reliable, probative, and substantial" evidence.

4. In light of the evidence in the record of this case, including the "additional evidence" accepted by the court, the trial court erred in not finding that the penalty imposed by the Agency, i.e., revocation of County Med, Inc.'s certificate, was unduly harsh and excessive, and should be vacated.

{¶2} We find no merit to the appeal and affirm.

## I. Facts and Procedural History

{¶3} County Med was certified by the DODD in 2008 to provide non-medical transportation services to individuals with developmental disabilities under the Individual Options Waiver, Level One Options Waiver, and Self-Employed Life Funding Waiver Programs. As an agency provider, County Med was subject to periodic compliance inspections by the

DODD. In June 2015, the DODD issued an order suspending County Med's certifications. The order also recommended revocation of the certificates due to a pattern of noncompliance with certification standards.

{¶4} County Med made a timely request for a hearing regarding the suspension and proposed revocation of its operating certificate, which took place in December 2015. Cathy Kramer ("Kramer"), a review specialist in the agency's Office of Standards and Review, testified that she conducted a regular compliance review of County Med in July 2012 and issued 19 citations for violations of the administrative rules. County Med was cited for allowing employees to work without first checking either the Sex Offender Registry or the DODD's Abuser Registry, which identifies employees who have previously committed abuse, neglect, and misappropriation against developmentally disabled individuals. (Tr. 21-23.) It was also cited for employing individuals without first completing employee background checks or drug tests and for failure to provide evidence of a current insurance policy. (Tr. 21-24.) Kramer found that some of County Med's employees worked without providing proof of a valid driver's license in violation of the agency standards, and County Med failed to provide proof that many of its employees received required training, among other things. (Tr. 23.)

{¶5} Following the review, County Med was given an opportunity to correct the citations. Kramer testified that she provided County Med a compliance summary report and a letter notifying it that compliance was required. County Med created a plan for compliance, and Kramer advised County Med's owner and CEO, Rania Karsheh ("Karsheh"), that not all the items in the plan would be accepted. Kramer made notations on the plan to assist County Med in complying with certification standards. (Tr. 25.) Kramer testified that all the cited items in

the 2012 review were eventually corrected and that all the drivers met the requirements of the administrative rules. (Tr. 29.)

{¶6} In February 2015, the DODD notified County Med of a regular compliance review scheduled for May 2015. Julie Gregg ("Gregg"), the lead reviewer in the DODD's Office of Standards and Review, testified that she conducted the May 2015 compliance review of County Med's operation. (Tr. 34.) Gregg issued 24 citations. Gregg cited County Med for (1) failure to document that drivers had valid driver's licenses and had been subjected to criminal background checks or mandatory database searches before delivering services to clients, (2) failure to document required employee trainings intended to protect individuals' health and safety, (3) failure to document proper and timely recordkeeping, and (4) failure to document required inspections of its vehicles, among other things. (Tr. 39, 48-59.) One vehicle had a cracked windshield and others lacked usable fire extinguishers. Gregg also found that County Med failed to provide evidence that it had investigated potential disqualifying offenses of two of its employees. (Tr. 49-50.)

{¶7} Gregg testified that the employees with potential disqualifying offenses were ultimately found to have not been convicted of those offenses. Gregg also stated that her interviews with clients revealed no complaints or concerns, and that County Med replaced the cracked windshield after the review.

{¶8} Theresa Ryan ("Ryan"), a manager in the DODD's Office of Standards and Review, testified that she manages suspensions and revocations and supervises special reviews. Ryan testified that many of the citations issued in 2015 were repeat offenses for which County Med had been cited in 2012. (Tr. 74.) Ryan referred the results of County Med's 2012 and 2015 reviews to a regional manager and recommended that County Med's certifications be summarily

revoked. When asked why she believed County Med's certifications should be revoked, Ryan stated:

> In 2012, when they were reviewed, they were issued 19 citations. Those citations were reviewed and compared to the citations from the 2015 review. * * * [I]t was found that 12 of the original 19 citations were re-cited again in 2015. These citations had to do with issues that were considered to be health and safety[.] I met with my assistant deputy director and I presented her with both reports and my recommendation, and it was approved. We believed that, based on the * * * two reviews * * * this agency is not equipped to continue to provide services to individuals with developmental disabilities.

(Tr. 74.) Ryan conceded that County Med did not employ individuals with disqualifying offenses and that the clients' needs were being met. She nevertheless concluded that County Med's certification should be revoked because it was not following agency rules and standards. (Tr.79-80.) County Med was not offered an opportunity to submit a plan for correction following the 2015 compliance review.

{¶9} Karsheh testified that the company has four employees other than herself, and that she knew all of the employees before she hired them. She presented proof of insurance that listed the covered employees and showed that County Med's vehicles were covered under the policy. Karsheh explained that turnover among drivers is low and that County Med serves 28 clients.

{¶10} Karsheh identified several documents she now uses to ensure compliance with agency requirements. She also presented documents that she claimed proved that she corrected the issues cited in the compliance reviews. (Tr. 93.) For example, she presented a daily transportation log that she claimed contained information cited as missing by the reviewers. (Tr. 91.) She further testified that County Med had been using the transportation log since June 1, 2015, which was after the May 2015 review but several months before the December hearing.

**{¶11}** Karsheh presented proof that she faxed semiannual and annual reports for 2014 and 2015 to the agency that were missing from the 2015 review. (Tr. 91.) With respect to these reports, Karsheh promised: "We'll continue to do it within the timeline." Karsheh presented a document identifying changes she made to County Med's recordkeeping, including changes to County Med's pre-employment checklist and trip sheets. She asserted that these changes corrected all the deficiencies cited by Gregg. (Tr. 93.)

**{¶12}** According to Karsheh, neither County Med nor the DODD received complaints from clients regarding County Med's services. However, she conceded that her company committed numerous violations and testified that "there could have been way worse issues" than those identified in her review "that actually could have harmed people." She explained:

> [I]f somebody just up and quits, it's hard for me to leave my consumers with no ride. So if it's an associate that I know, and I eventually get the paperwork done, I feel like that's okay. Which is wrong. It's not proper documentation. So * * * I'm going to find a friend or a relative that will be certified in this field, just in case I am out a driver * * * so we do not leave consumers without transportation.

(Tr. 107-108.) On cross-examination, Karsheh admitted that she did not apprise herself of the agency rules, but indicated that she has since educated herself and is now in a better position to ensure compliance.

**{¶13}** Based on the evidence presented at the hearing, the hearing examiner recommended that the director of the DODD uphold the suspension of County Med's provider certifications and issue an adjudication order revoking County Med's certifications. County Med filed timely objections to the hearing officer's report, but the DODD director overruled them and issued a final decision revoking County Med's provider certificates.

**{¶14}** County Med filed a timely appeal to the common pleas court. County Med also sought and obtained a stay of enforcement of the DODD's final decision. However, the

common pleas court ultimately affirmed the DODD's adjudication order. County Med now appeals the trial court's judgment.

## II. Law and Analysis

### A. Scope of the Record

{¶15} In the first assignment of error, County Med urges us to remand the case to the trial court for clarification of the trial court's ruling. County Med asserts the record on appeal is ambiguous because it is not clear whether the trial court considered exhibit Nos. 1 through 6 attached to its motion to stay enforcement of the DODD's final decision. It contends the trial court's judgment affirming the DODD's adjudication order indicates it may have considered this supplemental evidence. The court's judgment entry states, in relevant part:

> Upon consideration of the entire record *and such additional evidence as the court has admitted*, the court affirms the order of the Ohio Department of Developmental Disabilities finding that the order is supported by reliable, probative, and substantial evidence and is supported by law. (Emphasis added.)

Thus, the court's judgment entry suggests it may have considered additional evidence.

{¶16} However, County Med filed a motion to supplement the record with the documents "showing compliance with agency rules and regulations on and after December 4, 2015" that were filed in conjunction with its motion to stay, but the trial court never ruled on it. "When a trial court fails to rule on a motion, the motion is considered denied." *State v. Pate*, 8th Dist. Cuyahoga No. 95382, 2011-Ohio-1692, ¶ 33. Therefore, the evidence attached to the motion to stay was never admitted into the record as supplemental materials.

{¶17} Furthermore, the documents "showing compliance with agency rules and regulations on and after December 4, 2015" were not admissible in this administrative appeal. R.C. 119.12(K) provides that common pleas courts hearing administrative appeals are "confined

to the record as certified to it by the agency." R.C. 119.12(K) permits a common pleas court, in its discretion, to admit additional evidence, but only if it first determines that (1) the additional evidence is "newly discovered" and (2) a reasonably diligent search prior to the administrative hearing would not have ascertained the evidence. *Hetrick v. Ohio Dept. of Agriculture*, 10th Dist. Franklin No. 15AP-944, 2017-Ohio-303, ¶ 44.

{¶18} The administrative hearing was held on December 3, 2015. As previously stated, County Med sought to supplement the record with documents "showing compliance with agency rules and regulations on and after December 4, 2015." (Motion of Appellant, County Med, Inc. to Supplement Administrative Record.) "Newly discovered evidence" refers to evidence that existed at the time of the administrative hearing but, despite a reasonably diligent search, could not have been discovered before the hearing. *Golden Christian Academy v. Zelman*, 144 Ohio App.3d 513, 517, 760 N.E.2d 889 (10th Dist.2001). In other words, "newly discovered evidence" does not refer to "newly created evidence." *Id.*, citing *Diversified Benefit Plans Agency, Inc. v. Duryee*, 101 Ohio App.3d 495, 501-502, 655 N.E.2d 1353 (9th Dist.1995), citing *Steckler v. Ohio State Bd. of Psychology*, 83 Ohio App.3d 33, 38, 613 N.E.2d 1070 (8th Dist.1992).

{¶19} R.C. 2506.03 also provides that common pleas courts hearing administrative appeals are "confined to the transcript filed under section 2506.02 of the Revised Code." R.C. 2506.03 allows a trial court to supplement the record under the following limited circumstances:

> (1) The transcript does not contain a report of all evidence admitted or proffered by the appellant.

> (2) The appellant was not permitted to appear and be heard in person, or by the appellant's attorney, in opposition to the final order, adjudication, or decision, and to do any of the following:

(a) Present the appellant's position, arguments, and contentions;

(b) Offer and examine witnesses and present evidence in support;

(c) Cross-examine witnesses purporting to refute the appellant's position, arguments, and contentions;

(d) Offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions;

(e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.

(3) The testimony adduced was not given under oath.

(4) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from, or the refusal, after request, of that officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body.

(5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

{¶20} The exhibits attached to County Med's motion to stay enforcement of agency decision, which County Med sought to have admitted into the agency record, consisted of an affidavit executed by Karsheh on April 13, 2016, in which she authenticates several positive client surveys from November 2015 and recommendation letters from clients from June 2015. None of the evidence sought to be admitted as supplemental material fell within any of the categories described in R.C. 2506.03.

{¶21} Karsheh's affidavit was not admissible under either R.C. 119.12(K) or 2506.03 because she testified under oath at the administrative hearing, and her affidavit testimony related to events that occurred after the hearing. Evidence created after the hearing does not fall within the definition of "newly discovered evidence" because it did not exist at the time of the hearing. *Golden Christian Academy*, 144 Ohio App.3d at 517, 760 N.E.2d 889. Moreover, County Med

failed to demonstrate that, despite a reasonably diligent search, it was unable to produce the client surveys and recommendation letters before the December hearing. Therefore, the documents County Med sought to have admitted into the trial court record were inadmissible and were never made part of the record.

{¶22} The first assignment of error is overruled.

## B. Revocation of Provider Certificate

{¶23} In the second assignment of error, County Med argues the trial court erred in affirming the DODD's decision to revoke its provider certificate because "the evidence presented by County Med, Inc. shows conclusively that County Med, Inc. was in full compliance with all of the Agency's rules and regulations." (Appellant's Brief p. 1.) In the third assignment of error, County Med argues the trial court erred in affirming the DODD's decision to revoke County Med's provider certificate because the "final Agency Decision was not founded on 'reliable, probative, and substantial' evidence." (Appellant's Brief p. 1.) We discuss these assigned errors together because they are interrelated.

### 1. Standard of Review

{¶24} In an administrative appeal, the common pleas court considers the "whole record," including any new or supplemental evidence admitted pursuant to R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). A common pleas court must "not substitute its judgment for that of an administrative board * * * unless the court finds that there is not a preponderance of reliable, probative and substantial

evidence to support the board's decision." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

**{¶25}** In *Henley*, the Ohio Supreme Court clarified that "[t]he standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope'" than the standard of review applied by the trial court. (Emphasis deleted.) *Id.* at 147, quoting *Kisil* at 34. The court explained that R.C. 2506.04

> "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." [*Kisil*] at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988).

*Henley* at 147.

**{¶26}** Ultimately, the standard of review that we apply in an administrative appeal "permits reversal only when the court of common pleas errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30.

### 2. Revocation

**{¶27}** R.C. 5123.166 governs the DODD's authority to revoke operating certificates issued to agency providers such as County Med. R.C. 5123.166(A) authorizes the DODD to revoke a provider certificate "if good cause exists as specified in R.C. 5123.166(B)." As relevant here, R.C. 5123.166(B) provides that "good cause" may be demonstrated either by "[t]he

person['s] * * * failure to meet or continue to meet the applicable certification standards established in rules adopted under section 5123.1611 of the Revised Code," or "nonfeasance." R.C. 5123.166(B)(1) and (6). Nonfeasance is "'the failure to act when a duty existed.'" *Teagardin v. Metal Foils, L.L.C.*, 11th Dist. Lake No. 2001-L-235, 2003-Ohio-1975, ¶ 11, quoting *Black's Law Dictionary* 861 (7th Ed.2000). Thus, a provider's conduct may at once constitute both nonfeasance and the failure to meet applicable certification standards.

{¶28} It is undisputed that County Med failed to comply with several certification standards. Kramer testified that although County Med provided nonmedical transportation services, it lacked documentation verifying that its drivers had valid driver's licenses, failed to provide proof of insurance for its employees and vehicles, and failed to provide proof that its employees received required training. Kramer also cited County Med for allowing employees to work without first conducting criminal background checks and drug tests, or searching mandatory registries, such as the Sex Offender Registry and the DODD's Abuser Registry, among other things. (Tr. 23.)

{¶29} Following the 2012 compliance review, Kramer worked with County Med from July 2012 through March 2013 helping County Med bring its operation into compliance. (Tr. 79.) Gregg testified that Kramer spent an inordinate amount of time with County Med and that reviewers are expected to complete the compliance process within 90 days. (Tr. 80.)

{¶30} Gregg also testified that in May 2015, she cited County Med for (1) failure to document that drivers had valid driver's licenses and had been subjected to criminal background checks or mandatory database searches before delivering services to clients, (2) failure to document required employee trainings, such as first-aid and CPR, intended to protect individuals' health and safety, (3) failure to document proper and timely recordkeeping, and (4)

failure to document required inspections of its vehicles, among other things. (Tr. 39, 48-59.) Ryan reviewed both County Med's 2012 and 2015 compliance reviews and concluded that a pattern of noncompliance created a substantial risk to the health and safety of the clients who depend on County Med's services. (Tr. 75.)

{¶31} County Med corrected many of the violations it received from the May 2015 compliance review. However, despite receiving 90 days notice of the May 2015 compliance review, County Med was cited for 19 violations. County Med had previously been cited for 12 of the 19 violations, even though it received in-depth assistance in bringing the operation into compliance. (Tr. 68.) Ryan explained that these repeat offenses, which concerned clients' health and safety, indicated that County Med "was not equipped to continue to provide services to individuals with developmental disabilities." (Tr. 75.) She also testified that the DODD views repeat violators who continue to be out of compliance as posing "a significant jeopardy to individuals." (Tr. 75.)

{¶32} County Med was given a second chance to comply with agency standards but continued to violate them, even after receiving comprehensive compliance support from Kramer and 90 days notice of the 2015 compliance review. Thus, a preponderance of the evidence supports the DODD's finding and the trial court's finding that County Med committed nonfeasance by failing to comply with the DODD's certification standards.

{¶33} Accordingly, the second and third assignments of error are overruled.

### C. Harsh and Excessive Consequence

{¶34} In the fourth assignment of error, County Med argues the trial court erred in not finding that revocation of County Med's operating certificate was unduly harsh and excessive, and should be vacated.

{¶35} We are cognizant of the effects caused by the loss of County Med's operating certificate. However, as previously stated, a common pleas court may "not substitute its judgment for that of an administrative board * * * unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil*, 12 Ohio St.3d 30 at 34, 465 N.E.2d 848. And our review is even more limited than that of the trial court. The board's decision to revoke County Med's certification is supported by a preponderance of reliable, probative, and substantial evidence. We are therefore obliged to affirm the trial court's judgment.

{¶36} Therefore, the fourth assignment of error is overruled.

{¶37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR