[Cite as *Hand & Hand MRDD Residential Servs., Inc. v. Ohio Dept. of Dev. Disabilities*, 2017-Ohio-9287.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hand & Hand MRDD Residential Services, Inc., | : | |
| | : | |
| Appellant-Appellant, | : | |
| | : | No. 17AP-116 |
| v. | | (C.P.C. No. 16CV-00677) |
| | : | |
| Ohio Department of Developmental Disabilities, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |

---

## D E C I S I O N

### Rendered on December 28, 2017

---

**On brief:** *Ronald B. Noga*, for appellant. **Argued:** *Ronald B. Noga*.

**On brief:** *Michael DeWine*, Attorney General, and *Stephanie Deters*, for appellee. **Argued:** *Stephanie Deters*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Appellant-appellant, Hand & Hand MRDD Residential Services, Inc., appeals from the judgment entry of the Franklin County Court of Common Pleas affirming an adjudication order issued by appellee-appellee, Ohio Department of Developmental Disabilities, to revoke appellant's provider certifications. For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} At the time of adjudication of this matter, appellant was an agency certified by appellee to provide services to individuals with developmental disabilities since

approximately 2004. Specifically, appellant was certified to provide Individual Options Wavier, Level One Waiver, Self-Empowered Life Funding Waiver, and Supported Living Provider services to individuals with developmental disabilities. Appellant provided such services for approximately 14 adult clients between the ages of 30 and 50 who lived at 9 different sites. The sites were not owned by appellant but, rather, appellant's employees would travel to the clients' homes to provide 24-hour care and supervision. John Flemon is the owner and CEO of appellant.

{¶ 3} By two letters dated January 22, 2015, appellee suspended and also proposed the revocation of appellant's certifications pursuant to R.C. 5123.166. As the basis for the proposed revocation, appellee listed the result of appellant's December 2014 special provider compliance review which yielded 17 citations, prior provider compliance reviews yielding citations in 2006, 2008, and 2009, a suspension in 2010 based on the 2009 compliance review, and appellee's failure to implement and/or maintain its previously submitted plans of correction following previous compliance reviews.

{¶ 4} A hearing on the matter was held on September 29 and 30, 2015. The hearing examiner issued her report and recommendation on November 5, 2015. In it, the hearing examiner concluded that appellee demonstrated by a preponderance of the evidence that there is good cause to revoke appellant's provider certification, pursuant to R.C. 5123.166, because the evidence showed appellant "committed acts of misfeasance, nonfeasance, and other conduct that was, or could be, injurious to the individuals served by [appellant]" pursuant to R.C. 5123.166(B)(4), (6), and (9). (Hearing Examiner Report at 33.) The hearing examiner noted that some of the numerous violations cited as part of the December 2014 compliance review were of a "fairly innocuous nature," that appellee would not likely seek to revoke a certification on those issues alone, and that appellee's counsel agreed at the hearing this case is essentially about background checks, a process which includes checking a prospective employee's criminal record and with several registries, ensuring the person has certain valid, up-to-date certifications, and ensuring the person has at least a high school diploma or GED. (Hearing Examiner Report at 33.) The background checks are required "to make sure the prospective employee is a safe person to care for individuals with developmental disabilities." (Hearing Examiner

Report at 34.)   Regarding appellee's track record on this issue, the hearing examiner wrote:

> The evidence presented at the hearing showed that Hand & Hand was found to have failed to complete those background checks several times, over a period of several years. Compliance reviews in 2006 and 2008 found instances where Hand & Hand had not completed the necessary background checks for employees who were working with developmentally-disabled clients. Both times, the provider submitted a plan of correction and gave assurances that it had addressed the problems.  When a 2009 compliance review found the provider in violation of the same regulations, the Department suspended the provider's certification in early 2010. Manager Theresa Ryan testified that in response, Hand & Hand submitted one of the best plans of correction she had ever seen, thoroughly addressing how the violations had been corrected so that the Department could be assured that they would not occur again.  An agent from the Department made a site visit and agreed that the provider had effectively changed its practices, so the suspension was lifted in March 2010. Then, when the 2014 compliance review was initiated, the reviewers found the same problems - employees were once again working without having had all of the required background checks, and one of them had disqualifying criminal offenses on her record.  The fact that the same violations continued to occur even after repeated assurances that the deficiencies had been corrected is the basis for the Department's proposal to revoke Hand & Hand's certification.

 (Hearing Examiner Report at 34.)

{¶ 5}   The hearing examiner further discussed appellant is a provider that agreed to comply with certain standards in exchange for Medicaid reimbursement, and, as such, appellee is justified in seeking to revoke the provider's certification "[w]hen those regulations are continually disregarded after the provider has given numerous assurances that it will comply."  (Hearing Examiner Report at 35.)   Regarding appellant's recent acquisition of an experienced consultant to address the deficiencies, the hearing examiner noted appellee "justifiably does not have confidence that the deficiencies have been permanently addressed so that they will not be found again."  (Hearing Examiner Report at 35.)

{¶ 6} The hearing examiner recognized there is no suggestions that appellant did anything to deliberately harm a client and that letters written on appellant's behalf attest to appellant's compassionate care for its clients. Nonetheless, the hearing examiner was persuaded background checks are a critical part of appellee's ability to protect consumers who have developmental disabilities which may limit their ability to advocate for themselves and who receive direct care from provider staff with limited supervision, and, therefore, citations involving the failure to conduct background checks are very serious. As a result, the hearing examiner recommended the revocation of appellant's certifications and, based on the mitigation evidence, recommended appellant be permitted to reapply for certification after a period of five years.

{¶ 7} Appellant submitted the following objections to the recommendation of the hearing examiner:

> 1. The facts do not support a decertification based on the legal standard for good cause utilized by the Hearing Examiner.
>
> 2. The Hearing Examiner's finding of "good cause" to decertify is unsupportable when the negative impact of that result is balanced against the alleged deficiencies.

(Appellant's Objections to the Report and Recommendation of the Hearing Examiner at 2, 3.) On January 8, 2016, appellee's director issued an adjudication order adopting the hearing examiner's findings of fact and conclusions of law, approving the recommendation, and revoking appellant's certifications. Appellant filed a timely appeal with the court of common pleas.

{¶ 8} On February 6, 2017, the court of common pleas issued its decision and entry upholding the adjudication order. In doing so, the court of common pleas noted appellant does not dispute any of the violations documented in the 2006, 2008, 2009, and 2014 compliance reviews occurred and found, based on the violations, appellee had good cause to revoke appellant's provider certification pursuant to R.C. 5123.166(B)(4) (misfeasance), R.C. 5123.166(B)(6) (nonfeasance), and R.C. 5123.166(B)(9) ("[o]ther conduct the director determines is or would be injurious to individuals who receive or would receive supported living from the person or government entity."). The court of common pleas determined appellant's first objection, which contended appellee had to

prove actual harm as a result of appellant's violations under the nonfeasance and misfeasance section, was contrary to law based on the definition of both of those terms. The court of common pleas determined appellant's second objection, which concerned appellee violating the "Bill of Rights" codified in R.C. 5123.62, was not supported by any evidence and instead supported appellee's argument as to the importance of background checks. On considering the entire record, the court of common pleas found appellee's adjudication order supported by reliable, probative, and substantial evidence, to be in accordance with law, and, therefore, affirmed the order.

{¶ 9} Appellant filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant presents three assignments of error:

[1.] The Trial Court erred in interpreting the provisions of O.R.C. Section 5123.166 relied on by the Court to support revocation of Hand & Hand's provider status by failing to recognize the requirement of proof of injury or actual harm thereby rendering the statute unconstitutionally void for vagueness and a Violation of Due Process.

[2.] The Court of Common Pleas erred as a matter of law in failing to find the process utilized by ODDD in issuing a Revocation Order in this case violated O.R.C. Section 5123.62, (the "bill of rights" applicable to Appellant's consumers), and therefore was contrary to law.

[3.] The Court of Common Pleas erred in failing to find ODDD's violation of O.R.C. Section 5123.62 rendered any finding of "good cause" contrary to law.

## III. STANDARD OF REVIEW

{¶ 11} In an administrative appeal, pursuant to R.C. 119.12, the court of common pleas reviews an agency's order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12(M); *Saxe v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 10th Dist. No. 09AP-1022, 2010-Ohio-4377, ¶ 7. Reliable, probative, and substantial evidence has been defined as follows:

"Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. * * *

> "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. * * * "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). "In applying this standard, the court must 'give due deference to the administrative resolution of evidentiary conflicts.' " *Saxe* at ¶ 7, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). The court of common pleas " 'will not substitute its judgment for the [agency]'s where there is some evidence supporting the [agency]'s Order.' " *Inrex Home Care, LLC v. Ohio Dept. of Dev. Disabilities*, 10th Dist. No. 16AP-814, 2016-Ohio-7986, ¶ 8, quoting *Harris v. Lewis*, 69 Ohio St.2d 577, 578 (1982).

{¶ 12} "On further appeal to this court, our standard of review is more limited." *Saxe* at ¶ 8. "Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence." *Id.*, citing *Bd. of Edn. of Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). "Our role is limited to a determination of whether the court of common pleas abused its discretion in finding that the [agency's] order was or was not supported by reliable, probative, and substantial evidence." *Saxe* at ¶ 8, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, on the question of whether the agency's order was in accordance with law, this court's review is plenary. *Saxe* at ¶ 8; *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

## IV. DISCUSSION

### A. First Assignment of Error

{¶ 13} Under the first assignment of error, appellant contends the trial court erred when it interpreted the applicable provisions of R.C. 5123.166 to not require "proof of injury or actual harm thereby rendering the statute unconstitutionally void for vagueness

and a Violation of Due Process."  (Appellant's Brief at v.)  For the following reasons, we disagree.

{¶ 14}  In *Inrex Home Care*, we considered a vagueness challenge to the good cause language in R.C. 5123.166(B)(4) in the context of reviewing an injunction motion.  There, we stated:

> "In enacting a statute, it is presumed that * * * [c]ompliance with the constitutions of the state and of the United States is intended."  R.C. 1.47(A); *see also State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, ¶ 10, 871 N.E.2d 547.  Courts have a duty to liberally construe statutes "to save them from constitutional infirmities."  *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 538, 1999-Ohio-368, 706 N.E.2d 323 (1999).  "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."  *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.
>
> * * * A statute is not void simply because it could be worded more precisely or with additional certainty.  *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals*, 63 Ohio St.3d 354, 588 N.E.2d 116 (1992), citing *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).  The question is whether the law affords reasonable individuals of ordinary intelligence fair notice and sufficient definition and guidance to enable them to conform their conduct to the law.  *Papachristou v. Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

*Id.* at ¶ 10-11.

{¶ 15}  R.C. 5123.166 governs appellee's authority to revoke certificates issued to agency providers such as appellant.  R.C. 5123.166 states in pertinent part:

> (A) If good cause exists as specified in division (B) of this section and determined in accordance with procedures established in rules adopted under section 5123.1611 of the Revised Code, the director of developmental disabilities may issue an adjudication order requiring that one of the following actions be taken against a person or government entity seeking or holding a supported living certificate:

* * *

(2)  Revocation of a supported living certificate;

(B) The following constitute good cause for taking action under division (A) of this section against a person or government entity seeking or holding a supported living certificate:

(1) The person or government entity's failure to meet or continue to meet the applicable certification standards established in rules adopted under section 5123.1611 of the Revised Code;

(2)  The person or government entity violates section 5123.165 of the Revised Code;

(3) The person or government entity's failure to satisfy the requirements of section 5123.081 or 5123.52 of the Revised Code;

(4)  Misfeasance;

(5)  Malfeasance;

(6)  Nonfeasance;

(7)  Confirmed abuse or neglect;

(8)  Financial irresponsibility;

(9) Other conduct the director determines is or would be injurious to individuals who receive or would receive supported living from the person or government entity.

{¶ 16} The adjudication order revoking appellant's certifications is based on R.C. 5123.166(B)(4), (6), and (9), covering misfeasance, nonfeasance, and other conduct the director determines is or would be injurious to individuals who receive or would receive supported living from the person or government entity.

{¶ 17} Appellant's first issue under this assignment of error contends R.C. 5123.166(B)(4), (6), and (9) must be interpreted as encompassing occurrences of injury or actual harm or else those sections are rendered unconstitutionally void for vagueness.

Appellant gives example definitions of misfeasance and nonfeasance that it contends require receipt of an injury as a requirement in the context of revocation and argues these more specific definitions must be adopted to provide an agency notice of what conduct is prohibited and thereby prevent arbitrary and discriminatory enforcement. Appellant does not specify how R.C. 5123.166(B)(9) is unconstitutionally vague.

{¶ 18} First, the first time appellant raised the constitutional issues was in a reply brief to the court of common pleas. The court of common pleas did not address the constitutional arguments and contained its analysis to the two arguments corresponding to appellant's objections to the hearing examiner's report, which focused on whether the evidence here supported decertification. Appellate courts generally decline to address, for the first time, issues which could have been, but were not, properly raised in early proceedings. *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 47 (10th Dist.); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18; *Atkins v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 08AP-182, 2008-Ohio-4109, ¶ 18-19 (noting that waiver applies to constitutional issues and finding that it need not consider, for the first time, constitutional arguments that an appellant failed to properly raise to the trial court).

{¶ 19} Regardless, we disagree with appellant that the three bases relied on by the hearing examiner specifically require "proof of injury or actual harm" based on definitions that appellant contends are specific to the context of this case rather than improper "general[ized]" definitions used by the court of common pleas. (Appellant's Brief at v, 8, 11.) The definitions provided by appellant for these two terms are not specific to revocation or decertification cases but are, instead, derived from removal from office cases and even acknowledge that actions "harmful to the public welfare" may suffice to support such removals. (Appellant's Brief at 11.)

{¶ 20} Contrary to appellant's position, a recent case addressing nonfeasance specifically under R.C. 5123.166(B)(6) in the context of appellee's revocation of a provider's certifications applied a definition similar to what the court of common pleas utilized in this case and did not require proof of injury or actual harm. *Cty. Med, Inc. v. Ohio Dept. of Dev. Disabilities*, 8th Dist. No. 104921, 2017-Ohio-5745, ¶ 27-32, quoting *Teagardin v. Metal Foils, L.L.C.*, 11th Dist. No. 2001-L-235, 2003-Ohio-1975, ¶ 11,

quoting *Black's Law Dictionary* 861 (7th Ed.2000) ("Nonfeasance is ' "the failure to act when a duty existed." ' "). Using this definition, the *Cty. Med* court found that "a provider's conduct may at once constitute both nonfeasance and the failure to meet applicable certification standards." *Cty. Med* at ¶ 27. As a result, the *Cty. Med* court held evidence of a provider's repeated failure to comply with appellee's certification standards, including failure to document whether drivers had been subjected to criminal background checks, supported appellee's and the trial court's findings that the provider committed nonfeasance.

{¶ 21} The court of common pleas utilized a similarly general definition in addressing malfeasance, which describes a lawful act performed in a wrongful manner. *Haycook v. Miller*, 10th Dist. No. 74AP-485 (Mar. 18, 1975). We find, and appellant provides, no legal authority or compelling reason to differentiate misfeasance in this regard in order to impose a requirement of proof of injury or actual harm where nonfeasance has no such requirement. Considering all the above, we disagree with appellant that the court of common pleas' determination that misfeasance and nonfeasance under R.C. 5123.166(B)(4) and (6) do not require proof of actual harm is contrary to law.

{¶ 22} Regarding R.C. 5123.166(B)(9), appellant provides no discernable argument or authority in support for how R.C. 5123.166(B)(9) requires "proof of injury or actual harm" or is unconstitutionally vague. (Appellant's Brief at v, 8.) R.C. 5123.166(B)(9) expressly applies to "conduct the director determines is *or would be* injurious to individuals who receive *or would* receive supported living from the person or government entity." (Emphasis added.) The plain language of R.C. 5123.166(B)(9), in referencing prospective injury, does not require "proof of injury or actual harm" but, instead, allows appellee to revoke certifications to prevent future harm to persons receiving supported living care. (Appellant's Brief at v, 8.) Therefore, we likewise disagree that R.C. 5123.166(B)(9) must be interpreted as encompassing occurrences of injury or actual harm.

{¶ 23} In its second issue under this assignment of error, appellant contends if we were to interpret injury or actual harm is "inherent" in misfeasance and nonfeasance as

used in R.C. 5123.166, reversal is nonetheless required.    (Appellant's Brief at 16.) Appellant presents an array of arguments in support of this contention.

{¶ 24} Appellant first contends, in this case, the three bases relied on by the hearing examiner would be "eliminated" since there is no reliable, probative, or substantial evidence of any injury or actual harm having occurred as a result of any of the deficiencies found by appellee.    (Appellant's Brief at 16.)    We have already determined that R.C. 5123.166(B)(4), (6), and (9) do not require evidence of injury or actual harm. Therefore, this argument is moot.

{¶ 25} Appellant also raises two contentions in regard to the hearing examiner's report.    Appellant contends the hearing examiner's failure to state what evidence supports each section of R.C. 5123.166(B) she relied on, in and of itself, "renders the Court's conclusion that there is reliable, probative or substantial evidence to support any of the three statutory bases * * * an impossibility."    (Appellant's Brief at 17.)    Appellant also contends, regarding R.C. 5123.166(B)(9), the hearing examiner's statement that the statute reads " 'could' be injurious when the statute reads 'would' be injurious" renders her conclusions of law "erroneous on its face as a matter of law."    (Appellant's Brief at 18.) However, appellant cites no legal authority for either of these arguments, which both undermines its burden of affirmatively demonstrating error on appeal and violates of App.R. 16.    *Miller v. Johnson & Angelo,* 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2 ("The burden of affirmatively demonstrating error on appeal rests with the [appellant]."); *see also* App.R. 9 and 16(A)(7) ("The appellant shall include in its brief, under the headings and in the order indicated, all the following: * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies.*").    (Emphasis added.)    *Inner City Living, Inc. v. Ohio Dept. of Dev. Disabilities*, 8th Dist. No. 105255, 2017-Ohio-8317, ¶ 16 ("It is not an appellate court's responsibility to find and articulate legal authority to support an appellant's assigned error.").    We also fail to see how these particular arguments support reversal based on the assignment of error as stated.    *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, citing App.R. 12(A)(1)(b) (stating that "a court of appeals shall * * * [d]etermine the appeal on its merits on the

assignments of error set forth in the briefs"); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding that appellate courts "rule[] on assignments of error only, and will not address mere arguments").

{¶ 26} Accordingly, appellant's first assignment of error is overruled.

**B.  Second Assignment of Error**

{¶ 27} Under the second assignment of error, appellant contends the court of common pleas erred as a matter of law in failing to find the process utilized by appellee in issuing a revocation order in this case violated R.C. 5123.62, the "bill of rights" applicable to persons with developmental disabilities.  For the following reasons, we disagree.

{¶ 28} Specifically, appellant argues that appellee's policy of not consulting with appellant's consumers or assessing the impact on consumers of decertification of their provider violates R.C. 5123.62(A), (G), (I), (Q), and (R), rendering the administrative action contrary to law.  R.C. 5123.62 provides, in pertinent part, that the rights of persons with developmental disabilities include, but are not limited to, the following:

> (A) The right to be treated at all times with courtesy and respect and with full recognition of their dignity and individuality;
>
> * * *
>
> (G)  The right to receive appropriate care and treatment in the least intrusive manner;
>
> * * *
>
> (I) The right to communicate freely with persons of their choice in any reasonable manner they choose;
>
> * * *
>
> (Q)  The right to participate in decisions that affect their lives;
>
> (R) The right to select a parent or advocate to act on their behalf.

{¶ 29} As a preliminary issue, appellant has not provided any argument or legal authority for its ability, as a provider, to assert the rights of it clients to avoid appellee's revocation of its own license.  Appellant likewise has not provided any argument or legal

authority for the proposition that R.C. 5123.62 necessarily requires appellee to consult with appellant's consumers and assess the impact of decertification in its decision to revoke the license of their provider.  Such an absence of legal authority or argument violates App.R. 16(A)(7) and does not support appellant's burden in demonstrating error on appeal.  *Miller*; *Inner City Living*.

{¶ 30} Furthermore, the plain language of the statutes at issue does not support appellant's argument.  The process to revoke certification is governed by R.C. 5123.166, which provides that appellee may issue an adjudication order requiring revocation of certification if good cause exists, as specified in division (B) of that section, and the order is determined in accordance with procedures established in rules adopted under applicable statutes.  R.C. 5123.166(A).  Contrary to appellant's contention, no such requirement proposed by appellant is found in R.C. 5123.166.

{¶ 31} Finally, the court of common pleas looked at the record and concluded no record evidence exists that appellee violated R.C. 5123.62(A), (G), (I), (Q), and (R) while the order supported the issue of safe, compliant living environments as set forth in the bill of rights under R.C. 5123.62(B).  We find the common pleas court did not abuse its discretion in this regard.  Moreover, considering all the above, the court of common pleas did not err as a matter of law, and appellant's argument lacks merit.

{¶ 32} Accordingly, appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 33} Under the third assignment of error, appellant contends the court of common pleas erred in failing to find appellee's violation of R.C. 5123.62 rendered any finding of "good cause" contrary to law.  (Appellant's Brief at 26.)  Specifically, appellant takes issue with appellee's alleged failure to "balance the negative impact of that result against the alleged deficiencies."  (Appellant's Brief at 26.)

{¶ 34} Appellant contends a "balancing test" is required under appellee's "good cause" determination in R.C 5123.166(A). (Appellant's Brief at 29, 30.) According to appellant, this test requires appellee to weigh facts before arriving at a sanction and specifically requires appellee to consider the positive actions taken by appellant, the negative impact of decertification on appellant's consumers, and residents' wishes against actual deficiencies found.  According to appellant, had a proper weighing been conducted,

"one cannot reach a conclusion as a matter of law that there is 'good cause' " for decertification. (Appellant's Brief at 29.)

{¶ 35} Appellant has not provided any legal authority to support a requirement for such a balancing test, and we decline to find such a test exists in the first instance. As stated in a recent revocation case, "[i]t is not an appellate court's responsibility to find and articulate legal authority to support an appellant's assigned error." *Inner City Living* at ¶ 16. Furthermore, even if such a test exists or should exist, the record of this case supports good cause to decertify appellant. As detailed in the report of the hearing examiner and the decision of the court of common pleas, appellant repeatedly failed to properly conduct and document required background checks despite appellee's prior opportunities to correct these deficiencies. Appellee attested to the seriousness of background checks within the special context of providers working with individuals with developmental disabilities. The hearing examiner acknowledged appellant's positive contributions and used those in mitigation to recommend permitting appellant to reapply in five years. On this record, the trial court clearly did not abuse its discretion in making the decision that the administrative decision was based on reliable, substantive, and probative evidence and is accordance with law. Appellant's argument lacks merit.

{¶ 36} Accordingly, appellant's third assignment of error is overruled.

## V. CONCLUSION

{¶ 37} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____