[Cite as *Beauchamp v. Petit*, 2018-Ohio-1164.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dennis A. Beauchamp, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 17AP-591 |
| | | (C.P.C. No. 16CV-4052) |
| Don Petit, Registrar, | : | |
| Ohio Bureau of Motor Vehicles, | | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on March 29, 2018

**On brief:** *E. Scott Shaw*, for appellant.  **Argued:** *E. Scott Shaw*.

**On brief:** *Michael DeWine*, Attorney General, and *Peter L. Jamison*, for appellee.  **Argued:** *Brian R. Honen*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1}  Appellant-appellant, Dennis A. Beauchamp, appeals from the judgment entry of the Franklin County Court of Common Pleas affirming the final adjudication order of appellee-appellee, Ohio Bureau of Motor Vehicles ("Ohio BMV" or "appellee"), ordering the cancellation of appellant's driver's license pursuant to R.C. 4507.19.  For the following reasons, we affirm the decision of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On November 5, 2015, appellee sent appellant a written notice of proposed cancellation of appellant's driver's license pursuant to R.C. 4507.19.  After several continuances, a hearing on the matter was held on February 3, 2016.

{¶ 3} Appellant testified that "Dennis Alexis Beauchamp" is his full name and that he was born in Arecibo, Puerto Rico to parents Olga Rodriguez and Dennis Beauchamp, who were "twenty-something" and about 31, respectively, when he was born. (Tr. at 13, 14.) According to appellant, he did not know if his mother worked or how many siblings or half-siblings he had. He was an abused child; he grew up away from his parents and did not have a close relationship with them. Appellant left Puerto Rico around the age of 15 when a family member, who he could not recall specifically, bought him a plane ticket and put him on a plane.

{¶ 4} Appellant testified that once in the United States, he went to New York for a year or two, while travelling back and forth. Appellant ended up in Massachusetts, where he spent most of his time and held a driver's license. In 1996, when appellant was around 18 or 19, appellant was convicted of selling drugs and sentenced to approximately seven years in a Massachusetts prison. At that point, appellant says his parents "turned my back on me" and he does not "have much contact with them at all." (Tr. at 15.) After appellant was released from prison, appellant testified he lived with his friend, a DEA police officer, and detailed cars out of his house. Appellant then moved to Providence, Rhode Island and opened up a shop, but things did not go well and appellant moved back to New York. Appellant moved to Ohio after a friend who once lived here then told him about the potential to open a business in Ohio.

{¶ 5} In Ohio, appellant has owned his own business for the past nine or ten years and currently has two businesses: a towing company and a body shop. He has a girlfriend with whom he has a son, and the two are planning to marry. He has not been married before but has another biological child who lives in Providence, Rhode Island and a stepdaughter who is the biological child of his current girlfriend. Appellant testified he has not travelled back to Puerto Rico, or anywhere, since he was released from prison. Appellant does not have a United States passport.

{¶ 6} According to appellant, in March 2014, an investigator from the Ohio BMV contacted him about an issue with his driver's license and address. Appellant provided documents to show the investigator who he was, and appellant believed an investigator came to the shop that summer to do an inspection of the dealership. Someone told

appellant he had to change the address on his license, and appellant explained he had been living where he was working and ultimately fixed the address problem on his license.

{¶ 7} BMV Investigator John Shidell testified that he began investigating appellant in February 2014 due to appellant using his work address as a home address on his driver's license. During his research, Shidell noticed a Florida driver's license was issued under the same name and social security number but with photographs of different men. At that time, Shidell believed appellant had been a victim of identity theft or "was [a] fraud." (Tr. at 29.) In March 2014, Shidell met with appellant, and appellant was able to show proof of his Puerto Rican birth certificate and a social security card. According to Shidell, "[t]hey were both real documents" that "met the requirements for proof of citizenship." (Tr. at 30.) Shidell told appellant he needed to change his address on the driver's license.

{¶ 8} Shidell testified that in August 2014, he reached out to appellant again and told him he still needed to change his address, which appellant did do. Shidell additionally told appellant "we need to talk about his citizenship, that there was a possible duplicate person in Florida; and at that time, he could have been a victim of identity theft." (Tr. at 32.) Shidell wanted to meet with appellant again to ask him "a series of questions * * *, personal questions that only the real Dennis Beauchamp would know." (Tr. at 32.) According to Shidell, he attempted to meet with appellant and called appellant, but appellant never called Shidell back. Shidell put a note in their system to place a hold on appellant's documents when he next attempted to renew his driver's license, which would force appellant to meet with Shidell. However, for unknown reasons, appellant was able to renew his license without meeting with Shidell.

{¶ 9} Shidell reopened his investigation into appellant in May 2015 when the BMV received a complaint from a Dennis Alex Beauchamp in Florida ("Florida Beauchamp") claiming to be a victim of identity theft. Shidell spoke with the Florida Beauchamp, and the Florida Beauchamp faxed Shidell his birth certificate, which had a different stamp than appellant's birth certificate, social security card, Florida driver's license, and the social security card and birth certificate of Florida Beauchamp's son, who was born in 2006. (Tr. at 37.) On the son's birth certificate, the father's name is listed as Dennis Alexis Beauchamp Rodriguez.

{¶ 10} As part of his investigation, Shidell testified he contacted the Puerto Rican Fusion Center, immigration, the State Department, and the Social Security Administration, and conducted an interview with the Florida Beauchamp. The Puerto Rican Fusion Center provided Shidell with an arrest record containing a photograph of the Florida Beauchamp and arrests in 2005 or 2006. Immigration could not match a photograph of appellant to any known persons. On objections, Shidell did not testify as to what information the State Department provided since he did not present documentation at the hearing. The Social Security Administration provided Shidell with a list and applications documenting the 14 applications for duplicate social security cards made under the social security number indicated on both the Ohio and Florida Beauchamps' driver's licenses. In response to a question of what he found interesting or relevant about the social security duplicate card application, Shidell testified the application from July 23, 2003, the application originating from Massachusetts, had a signature line that was "totally different" from the rest of the applications. (Tr. at 46.)

{¶ 11} As part of his investigation, Shidell learned appellant had been incarcerated in Massachusetts. According to Shidell, he contacted the Department of Corrections in Massachusetts and received information regarding appellant's seven-year time in prison. In July 2015, Shidell conducted an interview with the Florida Beauchamp "[t]o ask him questions regarding his life, to see if he could be able to provide information that we would be able to verify." (Tr. at 41.) According to Shidell, Florida Beauchamp told him his mother's name, and the Ohio BMV was able to verify that name through independent investigation. Florida Beauchamp additionally stated to Shidell that he never lived in Massachusetts. Florida Beauchamp initiated another phone call with the Ohio BMV one week prior to the hearing to receive an update on the status of the case. Shidell testified that on completing his investigation, he believes the Florida Beauchamp "is the right Dennis Beauchamp." (Tr. at 67.)

{¶ 12} On cross-examination, Shidell testified that he did not send both certificates to Puerto Rican law enforcement to see if they were valid, that he contacted the Massachusetts State Police to receive appellant's arrest file record but had not received it yet, and that he had used the "LEADS, OLEG, [and] TLO" databases and not used the

"NCIC" database. (Tr. at 51, 52.) Shidell also agreed that some of the applications for duplicate social security cards were made while appellant was in prison.

{¶ 13} Todd Ballinger, chief of the investigations section of the Ohio BMV, testified that he served as Shidell's direct supervisor at the time of the investigation into appellant's driver's license, participated in the interview between the Florida Beauchamp and the Ohio BMV, and obtained documents from government agencies. From the Puerto Rican Police Department, by way of the Puerto Rican Fusion Center, Ballinger obtained a driver's license for a Dennis Alexis Beauchamp Rodriguez with a photograph that does not appear to be appellant and an arrest photograph and arrest records of the Florida Beauchamp. On cross-examination, Ballinger testified he had no reason to doubt the validity of the documents from the Massachusetts Department of Corrections.

{¶ 14} Appellee's Exhibit A, pages 1 through 35, were admitted into evidence without objection, and, with the hearing examiner's permission, appellee substituted a legible copy of page 36. Appellee's exhibits included appellant's driving record and license renewal, birth certificates and social security cards from both appellant and the Florida Beauchamp, the driver's license of the Florida Beauchamp, the social security card and 2006 Puerto Rican birth certificate of the Florida Beauchamp's son, a Social Security Administration list and applications for replacement cards under the social security number used by appellant and the Florida Beauchamp, a Puerto Rican driver's license under the name Dennis Alexis Beauchamp Rodriguez, and a copy of a Puerto Rican Department of Justice arrest photograph and history listing arrest dates of 1994, 1999, 2001, 2004, and 2005. Appellant submitted an "offender face sheet" from the Massachusetts Department of Correction without objection. (Appellant's Ex. 1 at 1.)

{¶ 15} On March 18, 2016, the hearing examiner issued his report and recommendation. The hearing examiner found, in pertinent part, that appellant presented what appears to be an authentic birth certificate and social security card; a person other than appellant using the same identity as appellant was arrested in Puerto Rice five times between 1994 and 2005, a time appellant admits he was not in Puerto Rico; a person other than appellant using the same identity as appellant is listed as the father of a child on a Puerto Rican birth certificate in 2006, a time appellant admits he was not in Puerto Rico; and a person other than appellant using the same identity as

appellant holds a Florida driver's license and the photo is not appellant. Based on the evidence presented at the hearing, the hearing examiner concluded "that there are at least two persons, possibly more, using the identity of Dennis Alexis Beauchamp Rodriguez" with the same date of birth and social security number. (Hearing Examiner Report & Recommendation at 3.) According to the hearing examiner:

> It is possible that [appellant] is the real Dennis A. Beauchamp and that another person or persons have stolen his identity. However, based upon all the actions that took place in Puerto Rico while [appellant] was admittedly in mainland Unites States, it is more likely that someone other than [appellant] is the real Dennis A. Beauchamp.

(Hearing Examiner Report & Recommendation at 3.) Thus, "[a] preponderance of the evidence submitted supports a finding and conclusion that [appellant] is not the person he claims to be," and the hearing examiner concluded that appellant's driver's license was issued to him in error under R.C. 4507.19. (Hearing Examiner Report & Recommendation at 4.) As a result, the hearing examiner recommended that appellee order the cancellation of the driver's license issued to appellant in the name of Dennis A. Beauchamp.

{¶ 16} Appellant filed objections to the hearing examiner report and recommendation on March 28, 2016. Appellant specifically objected to the hearing examiner's findings of fact addressing the person arrested in Puerto Rico, the person listed as the father of a child on a 2006 Puerto Rican birth certificate and the person holding a Florida driver's license with the same identity, and objected to the hearing examiner's conclusion of law that a preponderance of the evidence supports a finding and conclusion that appellant is not the person he claims to be and that appellant's license was issued in error and should be cancelled. Appellant asserted the Florida driver's license used in transactions in Kissimmee, Florida and Paris, Texas could have been a forgery, and "[t]he best practice would have been copies of the license used at the time of the application." (Objs. at 1.) Appellant additionally asserted copies of the slate sheet photos would have been the most convincing evidence of the incidents of arrests. Appellant further points to the hearing officer's quote: "It is possible that [appellant] is the real Dennis A. Beauchamp and that another person or persons have stolen his identity" as the "most damning thing" in the report and references appellee not choosing

to pay for more reliable methods of identification, such as DNA testing that people like appellant cannot afford.  (Objs. at 1.)

{¶ 17} On April 11, 2016, appellee issued a final adjudication order adopting the report and recommendation of the hearing examiner and ordering appellant's driver's license cancelled, pursuant to R.C. 4507.19, on the grounds that it was issued in error.  In doing so, appellee noted it is undisputed that appellant and the Florida Beauchamp are using a Puerto Rico birth certificate and a social security card bearing the same name as proof they are the real "Dennis A. Beauchamp," and the hearing examiner thus had to examine other evidence in order to determine that the preponderance of the evidence supported the BMV's initial determination appellant was not the real Dennis A. Beauchamp.  (Final Adjudication Order at 2.)

{¶ 18} Regarding appellant's contentions about the Florida driver's license, the final adjudication order states the evidence showed that a Florida driver's license issued to Dennis A. Beauchamp Rodriguez of Tampa bearing a photograph of someone other than appellant was used for applications on March 11, 2008 and March 5, 2009 and that:

> This same Dennis A. Beauchamp Rodriguez submitted numerous applications for replacement social security cards in Puerto Rico, had a Puerto Rico arrest record, and was listed as the father of a child on a 2006 Puerto Rican birth certificate. * * * Since [appellant] never lived in Florida and never returned to Puerto Rico after he was fifteen years old * * *, the Hearing Examiner concluded that the preponderance of the evidence showed that the real "Dennis A. Beauchamp" was Dennis Alexis Beauchamp Rodriguez of Florida.
>
> * * * While [appellant] speculate[d] that the Florida driver's license bearing the name and photograph of Dennis Alexis Beauchamp Rodriguez was a forgery used to engage in identity theft, he fails to cite any support for this assertion.

(Final Adjudication Order at 2.)   Appellee likewise noted appellant failed to cite any authority in support of his best evidence or DNA arguments or explain why he did not present evidence on his own to support his case.  Appellee emphasized the definition of the preponderance of the evidence standard means the "greater weight of the evidence" which, "although not sufficient to free the mind wholly from all reasonable doubt, is still

sufficient to incline a fair and impartial mind to one side of the issue rather than the other."   (Final Adjudication Order at 2.)   Ultimately, appellee found the hearing examiner's report was supported by the evidence.

{¶ 19} Appellant filed an administrative appeal with the court of common pleas pursuant to R.C. Chapter 119.  On July 21, 2017, the court of common pleas issued a decision affirming appellee's final adjudication order.  The court of common pleas recognized that appellee did not contact Puerto Rican law enforcement to verify more details about birth certificates, it was unclear whether appellee made much effort to obtain the NCIC or LEADS records that ought to exist for appellant, the Massachusetts police file was apparently never obtained by either party, and that 14 requests for duplicate cards for one individual's social security number "is at best confounding."  (July 21, 2017 Decision at 5.)   Nonetheless, according to the court of common pleas, "the Hearing Examiner was * * * entitled to consider inferences reasonably drawn from the direct evidence, and the credibility of witnesses."  (July 21, 2017 Decision at 4.)  The court of common pleas emphasized, unlike on appeal, that the hearing examiner had the opportunity to see appellant testify in person and directly evaluate his credibility and was entitled to give the materials such weight as he deemed reasonable.  It noted appellant "dodged" meeting with the BMV investigator, did not do a better job reconstructing his childhood and pre-prison life, could not recall who put him on a plane to the United States when he was 15 years old, and had a previous felony conviction.  (July 21, 2017 Decision at 4.)  In light of the evidence presented, the court of common pleas believed appellant's "credibility was reasonably viewed as minimal." (July 21, 2017 Decision at 4.)  After considering the entire record, the court of common pleas found the final adjudication order to be based on reliable, probative, and substantial evidence in the record and to be in accordance with law.

{¶ 20} Appellant filed a timely appeal to this court.

## II.  ASSIGNMENT OF ERROR

{¶ 21} Appellant presents one assignment of error:

> The trial court erred in denying Appellant's administrative appeal when the decision of the agency (BMV) was not supported by reliable, probative and substantial evidence and was in accordance with the law.

## III.  STANDARD OF REVIEW

{¶ 22} An appeal of the Ohio BMV's decision cancelling an Ohio driver's license, pursuant to R.C. 4507.19, is governed by R.C. Chapter 119.  *Columbus v. Sliker*, 30 Ohio App.3d 74 (10th Dist.1986); *Sturgill v. Caltrider*, 2d Dist. No. 18316 (Feb. 9, 2001).  *See also Gurish v. BMV*, 8th Dist. No. 98060, 2012-Ohio-4066, ¶ 6.  Pursuant to R.C. 119.12, a court of common pleas must determine whether an agency's decision is supported by reliable, probative, and substantial evidence and is in accordance with law.  R.C. 119.12(M); *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).  Reliable, probative, and substantial evidence is defined as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted.  In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.  (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 39, quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).  The Supreme Court of Ohio in *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108 (1980), described the trial court's standard in reviewing an agency's decision for reliable, probative, and substantial evidence as follows:

> [D]etermining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence.  Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court.
>
> In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility.  However, the findings of the agency are by no means conclusive.

> Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.

*Id.* at 111-12 citing *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275 (1955).

{¶ 23} Thus, "an administrative appeal to the common pleas court does not provide a trial de novo * * * but rather 'the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts,' [a]nd where the agency's decision is supported by sufficient evidence and the law, the common pleas court lacks authority to review the agency's exercise of discretion, even if its decision is 'admittedly harsh.' " *Capital Care Network of Toledo v. Ohio Dept. of Health*, ___ Ohio St.3d. ___, 2018-Ohio-440, ¶ 25, quoting *Conrad* at 111, and *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 236-37 (1959). *See also Bartchy* at ¶ 37, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993) (" 'We take this precedent to mean that an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable.' "); *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio St.3d 79, 81 (1998). However, " 'while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own.' " *Bartchy* at ¶ 38, quoting *Ohio Historical Soc.* at 471.

{¶ 24} " ' "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order." ' " *Bartchy* at ¶ 41, quoting *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992), quoting *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio

St.3d 257, 260 (1988). *Hand & Hand MRDD Residential Servs., Inc. v. Ohio Dept. of Dev. Disabilities*, 10th Dist. No. 17AP-116, 2017-Ohio-9287, ¶ 12. An appellate court does not weigh the evidence but, rather, only determines whether the trial court has abused its discretion. *Bartchy*; *Hand & Hand MRDD*. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Hand & Hand MRDD* at ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Absent an abuse of discretion, an appellate court must affirm the common pleas court's judgment, even if the appellate court would have arrived at a different conclusion than that of the common pleas court." *Edmands v. State Med. Bd.*, 10th Dist. No. 16AP-726, 2017-Ohio-8215, ¶ 11, citing *Bartchy* at ¶ 41-42. For issues of law, including whether the common pleas court applied the proper standard of review, an appellate court's scope of review is plenary. *Bartchy* at ¶ 42.

## IV. DISCUSSION

{¶ 25} Under his sole assignment of error, appellant contends the trial court erred in affirming the decision of the Ohio BMV to cancel his driver's license, pursuant to R.C. 4507.19, where the decision of the agency was not supported by reliable, probative, and substantial evidence and was not in accordance with law. On this record, we disagree.

{¶ 26} "In Ohio, a driver's license is a privilege, not a constitutionally guaranteed property right." *Gurish* at ¶ 12, citing *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 51 (1990). "R.C. Chapter 4507 grants authority to the BMV's registrar to administer the laws of Ohio relative to the licensing of drivers of motor vehicles." *Gurish* at ¶ 8, citing *Doyle* at 48. R.C. 4507.19 states "[t]he registrar of motor vehicles may cancel any driver's or commercial driver's license or identification card that was obtained fraudulently or unlawfully, was issued in error, or has been altered or willfully destroyed."

{¶ 27} Under this assignment of error, appellant argues the decision of the Ohio BMV was not supported by reliable, probative, and credible evidence but, rather, is only supported by "[s]peculation." (Appellant's Brief at 11.) Appellant contends it was incumbent on appellee to establish that appellant obtained his driver's license by fraud, and appellee "managed to prove only that Appellant and another individual in Florida claiming to have the same name, each possessed [facially valid] Puerto Rico birth certificates." (Appellant's Brief at 12.) Specifically, appellant asserts social security records submitted by

appellee showed 14 requests for duplicate social security cards for that same name and social security number had been made, investigator Shidell's testimony regarding the signatures on the social security applications was inadmissible under Evid.R. 901(B)(2), the Florida Beauchamp's familiarity of his son's birthdate had no bearing on establishing the Florida man as the true Beauchamp, and more investigation should have been done by appellee to determine who actually was the person identified in the birth certificate.  As such, appellant contends appellee fails to meet its burden of proof in proving cancellation of appellant's license under R.C. 4507.19 was warranted.  In appellant's view, the hearing officer's comment that "[i]t is possible that [appellant] is the real Dennis A. Beauchamp and that another person or persons has stolen his identity" reflects the lack of evidence to support appellee's case.  (Appellant's Brief at 14.)

{¶ 28} Regarding appellant's contention that Shidell's testimony regarding the signatures on the social security applications was inadmissible under Evid.R. 901(B)(2), we disagree that the rule applies here.   Evid.R. 901(B) applies to authentication or identification of illustrations.  Evid.R. 901(B) states:

> By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> * * *
>
> (2) Nonexpert opinion on handwriting.  Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

In this case, Shidell did not offer opinion testimony about the genuineness of the handwriting for purposes of authentication, and appellant does not suggest how Evid.R. 901(B)(2) is otherwise applicable to his testimony.  Therefore, this argument lacks merit.

{¶ 29} The remainder of appellant's contentions in support of his assignment of error essentially challenge the ability of the hearing officer to determine appellant is not Dennis A. Beauchamp, and, therefore, appellee issued him a driver's license in error for purposes of R.C. 4507.19, where the record presents conflicting information on that point. Appellant labels the hearing examiner's resolution of such conflicts of evidence, without definitive evidence, "[s]peculation."  (Appellant's Brief at 11.)

{¶ 30} We disagree appellee's decision was based only on speculation but, instead, was based on the hearing examiner's resolution of issues of credibility and weight of the evidence in a proper exercise of its role as trier of fact.  First, contrary to appellant's argument, the hearing examiner was permitted to compare the conflicting evidence and determine which evidence is more credible.  *Clayton v. Ohio Bd. of Nursing*, 10th Dist. No. 13AP-726, 2014-Ohio-2077, ¶ 47, *aff'd*, 147 Ohio St.3d 114, 2016-Ohio-643; *Conrad*.  The hearing examiner is likewise permitted to draw inferences from established facts, and a reviewing court will not disturb the conclusion reached by the hearing examiner unless such inferences are clearly unjustified.  *Conrad*; *B.P.O. of Elks v. Bd. of Liquor Control*, 105 Ohio App. 181, 183 (10th Dist.1957).

{¶ 31} Second, the court of common pleas did not act unreasonably, arbitrarily, or unconscionably on the record of this case.  Two people claiming to be Dennis A. Beauchamp, with identical birthdates and social security numbers, presented what appeared to be facially valid documents to support that identity.  Both appellant and the Florida Beauchamp were able to obtain a driver's license in different states, and appellant had a criminal record in Massachusetts while the Florida Beauchamp had a criminal record in Puerto Rico.  Thus, resolution of the case essentially came down to whether the hearing examiner believed appellant based on the evidence.

{¶ 32} In support of his belief that appellant was not the true Dennis A. Beauchamp, Shidell testified he was able to independently verify things with the Florida Beauchamp that only the real Beauchamp would know and specified that he was able to independently verify the Florida Beauchamp's mother's name.  Ballinger presented Puerto Rican Department of Justice records of arrests which occurred under that identity at dates which appellant was not in Puerto Rico.  Furthermore, the Florida Beauchamp initiated a complaint for identity theft with the Ohio BMV, cooperated with being interviewed and proactively followed up on the case, and provided several extra documents to support his identity, including the Puerto Rican birth certificate of his son, which states Dennis Alexis Beauchamp Rodriguez as the father.  On the other hand, appellant's testimony regarding how he came to the United States and the timeline of his whereabouts prior to incarceration in Massachusetts lacked clarity and detail, and appellant did not call the investigator back when presented with the identity issue.

{¶ 33} As outlined in the standard of review, in reviewing appellant's assignment of error, we may not appraise the weight of the evidence or correspondingly reverse based on our independent judgment of the weight of the evidence but are only permitted to determine whether the common pleas court abused its discretion in its examination of the record for reliable, probative, and substantial evidence. *Pons.* Under the limited standards of review at play in this case, appellant has not demonstrated reversible error, and we find the trial court did not abuse its discretion in affirming appellee's decision.

{¶ 34} Accordingly, appellant's assignment of error is overruled.

## V. CONCLUSION

{¶ 35} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____